AUSTIN & McCARGAR *v.* DELPHISE LANGLOIS.

January Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed May 16, 1908.

*Contracts—Action for Breach—Conditions Precedent—Admissibility of Evidence—Defendant's Damage Under the Contract as He Claims It—Discretion of Trial Court—Refusal to Set Aside Verdict—New Trial—Misconduct of Counsel—Playing Cards with Jurors.*

In special assumpsit, where the only plea was the general issue and defendant contended that the contract was different from that claimed by plaintiffs, and that plaintiffs had themselves broken the contract to defendant's damage, evidence of the amount of defendant's claimed damage was admissible, though he did not claim to recover, and could not recover, any more than his costs.

Where buyers of hay contract with the seller that he shall press and deliver it, and he refuses to press it, he breaks the contract, and the buyers may proceed to press it themselves.

Where buyers of hay agree with the seller that they are to press it and remove it from his premises, they have the right to press it within the time limited by the contract for its removal.

In such case, the pressing of the hay by the buyers is a condition precedent to their right of action on the contract, and their failure to perform that condition discharged the contract, and released the seller from liability.

The action of the trial court in denying a motion to set aside a verdict as against the evidence is not revisable.

Too much care cannot be exerted to preserve the purity of jury trials, and it is an established and salutary rule of law that the least intermeddling with jurors is a sufficient cause for setting the verdict aside.

Where it appeared that on an evening during a trial, after the evidence and arguments were closed, one of defendant's counsel played cards with some of the jurors in the case, the verdict for defendant should have been set aside on the ground of public policy, regardless of whether the verdict was affected by the misconduct.

SPECIAL ASSUMPSIT. Plea, the general issue. Trial by jury at the August Term, 1907, Grand Isle County, *Hall,* J., presiding. Verdict for the defendant to recover his costs, and judgment thereon. The plaintiff excepted. The plaintiff moved the court to set the verdict aside on the grounds recited in the opinion. Motion denied, to which plaintiff excepted. The opinion states the case.

*C. G. Austin & Sons* for the plaintiff.

It was error to admit defendant's evidence as to his damage on his claim as to what the contract was. Defendant denied the contract relied on by plaintiff, and, under the general issue, was allowed to set up a different contract, to introduce evidence in support of it, and of his damage thereunder. *Grout Bros.* v. *Moulton,* 79 Vt. 122; *Davenport* v. *Hubbard,* 46 Vt. 200; *Mory* v. *King,* 49 Vt. 304; *Weeks* v. *Prescott,* 53 Vt. 73.

The verdict should have been set aside for the misconduct of plaintiff's counsel in playing cards with the jurors during the trial, regardless of whether that misconduct affected the verdict. *Knights of Pythias* v. *Steele,* 107 Tenn. 1; *Vollrath* v. *Crow,* 9 Wash. 374; *Baker* v. *Jacob,* 64 Vt. 197; *McDaniels* v. *McDaniels,* 40 Vt. 363; *Shattuck* v. *Range Co.,* 69 Vt. 468; *Clement* v. *Spear,* 56 Vt. 401; *Carlisle* v. *Sheldon,* 38 Vt. 440; *Peacham* v. *Carter,* 21 Vt. 515; *Winslow* v. *Campbell,* 46 Vt. 746.

*Furman & Webster* for the defendant.

The evidence by, and on behalf of the defendant to the effect that he had a large amount of crops out of doors and that

he suffered damage because the plaintiffs did not take his hay out of his barns, as the defendant's evidence tended to show they agreed to do, so as to enable the defendant to get his crops into the barn, and that the defendant suffered damage thereby, was admissible under the general issue; not for the purpose of enabling the defendant to recover damages therefor, but as tending to make the contract, as testified to by the defendant, more probable. *Beckley* v. *Jarvis,* 55 Vt. 348; *Randall, Admr.* v. *Preston,* 52 Vt. 198; *Armstrong* v. *Noble,* 55 Vt. 428; *Stone* v. *Tupper,* 58 Vt. 409; *Fertilizer Co.* v. *Fuller,* 58 Vt. 315.

The action of the trial court on the motion to set the verdict aside as against the evidence is not revisable. *Sheldon* v. *Perkins,* 37 Vt. 550; *Wheatley* v. *Waldo,* 36 Vt. 237; *Minckler* v. *Est. of Minckler,* 16 Vt. 193; *Averill* v. *Robinson,* 70 Vt. 161; *State* v. *Peach,* 70 Vt. 283; *Thayer* v. *C. V. Ry. Co.,* 60 Vt. 214.

Whether the playing of cards as in this case furnishes a sufficient cause for setting aside the verdict, involves matter of fact tried by the court below, and the question whether the ends of justice and the purity of jury trials require a new trial to be granted rests in the sound discretion of the court that tried the cause, and the Supreme Court does not revise the decision of the county court resting in discretion. *Downer* v. *Baxter,* 30 Vt. 474; *Edgell* v. *Bennett et al.,* 7 Vt. 534.

TYLER, J. This action is special assumpsit for the defendant's alleged breach of a contract; plea, the general issue.

The plaintiffs' evidence tended to show that Sept. 18, 1906, they bought of the defendant a quantity of hay, estimated at fifty tons, for ten dollars a ton and one dollar and fifty cents a ton for pressing; that it was to be delivered on board the boat at Isle La Motte or on the cars at any time after Oct. 1, 1906, at their option, and be paid for on its delivery; that they paid the defendant $50 on the contract Sept. 29, and one hundred and five dollars and twenty-five cents Oct. 12; that in December, after navigation had closed, the defendant applied to the plaintiffs for more money, which they refused until he would press and deliver the hay, and that a few days later he refused to press it or permit the plaintiffs to press it; that they had always been ready to perform their part of the contract. They seek

to recover the one hundred fifty-five dollars and twenty-five cents paid by them and the profits they claim to have lost, hay having steadily advanced in price; that in May, 1907, the defendant sold the hay to other parties for sixteen dollars a ton.

The defendant's evidence tended to show the sale of the hay to the plaintiffs at ten dollars a ton and the payments, but he claimed that by the contract the plaintiffs were to press the hay and take it on board the boat at Isle La Motte before navigation closed in the fall of 1906; that it was to be paid for before Jan. 1, 1907, and that when the plaintiffs refused further payment after navigation had closed in December, 1906, he gave them written notice that he should claim damages by reason of their breach of the contract. His evidence also tended to show that in consequence of the plaintiffs not performing the contract and not removing the hay from his barns he suffered damage in not having the barns for the storage of other crops which lay out of doors and were injured, and he was allowed to show, under the plaintiffs' exception, that such damage to his crops was $125.

When this evidence was offered it was distinctly stated by the defendant's counsel that they did not seek to recover any damage, and only claimed that the plaintiffs were not entitled to recover any judgment against him. The court stated in ruling that the defendant did not claim and could not recover any more than his costs; that he might show what he desired to under his claim of what the contract was. The plaintiffs' counsel did not object to the admission of the evidence for that purpose, and upon inquiry by the court they said that the only objection was that it was not admissible under the general issue.

This Court cannot hold as matter of law that the evidence had no tendency to show that the contract was as the defendant claimed. It is true that the jury may have considered that the plaintiffs were not entitled to recover any sum because the defendant's damages were so large, but the court instructed the jury that, "whether the defendant suffered damages or not is not to be considered upon the question of damages in this case." After explaining that the burden was upon the plaintiffs to prove the contract as they claimed it, the court instructed them that if the plaintiffs had failed to prove their case then the defendant was entitled to recover his costs unless he prevented

the plaintiffs from carrying out the contract. . Under the instructions the jury should have understood that the defendant could in no event recover more than his costs, and such was the verdict.

As it was permissible for the defendant to show, for the purpose stated, that he suffered damage, it was not error to allow the amount to be given in evidence.

At the plaintiffs' request the court made this supplemental charge:

"The court further instructs you that neither party had the right to abrogate such a contract as you might find was made without the consent of the other party. Second:—That if the contract was as the plaintiffs claim and the defendant refused to press the hay, then the plaintiffs had the right to go on and press the hay themselves, and the refusal—if you find such a refusal—by the defendant would be a further breach of the contract. If you should find that the contract was as the defendant claims then the plaintiffs had a right to press the hay within the time that by the terms of the contract they were to take the hay; if you find such a contract you must find the time in which it might have been performed."

At the defendant's suggestion the court further charged that, "so far as both parties are concerned, if one or the other violates—and that is what I mean by a breach of the contract— that may be treated by the other party as a failure on its part, and he would have the right to abrogate it. But that is where there is a breach on the part of the other." To this the plaintiffs excepted.

It is to be observed that an essential element in the contract about which the parties differed was the pressing of the hay— whether it was to be pressed for delivery by the defendant or by the plaintiffs. If by the defendant, he had refused to press it, though requested, until navigation upon the lake had closed for the season and delivery was impossible. If the plaintiffs were to press it, they had neglected that essential part of the contract and thus made performance by the defendant impossible, and he was released. Such neglect by the plaintiffs did not *extinguish* a right of action in them, for no right of action ever existed under the contract. See *Harlow* v. *Dyer*, 43 Vt. 360. Upon the defendant's claim pressing the hay was a con-

dition precedent to the plaintiffs' right of action, and their failure to perform that condition discharged the contract. *Lawrence* v. *Dole,* 11 Vt. 549. The portion of the charge excepted to was applicable to this aspect of the case and was correct. We find no error in the rulings or in the charge.

After the jury had returned a verdict for the defendant to recover his costs the plaintiffs filed a motion to set aside the verdict for the reasons:

1st. That it was against the evidence, and the law as laid down by the court.

2nd. By reason of improper conduct by the defendant's counsel with several of the jurors in the case during the trial.

3rd. Because the defendant gave or caused to be given cigars to certain jurors after the verdict was rendered.

There was no reversible error in the action of the trial court in refusing to set the verdict aside upon the first ground. The motion was heard by the court upon the second and third grounds upon evidence taken in support of the same and the following facts were found: That one evening during the trial, after the evidence was closed and the arguments had been partly made, one of the counsel for the defendant, a law student not admitted to practice, but holding the office of state's attorney for the county, played cards with some of the jurors in the case. The court found that the act was done by the counsel without any intention on his part to influence the jurors' verdict, and failed to find that it tended in any way to affect it. The court held as matter of law that there was not sufficient ground for setting aside the verdict for that cause.

Immediately upon the rendition of the verdict the defendant and a brother each purchased a box of fifty cigars, and the defendant, upon leaving the store where the purchases were made, "began to treat to cigars and gave a cigar to each of two citizens whom he encountered on the street." He then gave the box to one of his brothers and went away to answer a call of some person at the court-house. His brother also went to the court-house and upon reaching the outside of the building began to tender cigars to whomsoever would accept them. Some of the cigars were taken from the box purchased by him and some from the box purchased by the defendant. "One of the jurors who sat in the trial of the case was given a cigar by

the brother of the defendant, but the evidence failed to show
that such giving was authorized or directed by the defendant,
and we find that in the giving of the cigar to the juror by the
brother the defendant in no wise directly or indirectly caused
the cigar to be given to the juror.'' It appeared, however, from
the testimony of the defendant and his brother that the cigar
was given to the juror in the defendant's presence. The court
found that most of the jurors in attendance upon court were in
the courtroom when the cigars were being handed around out-
side, as a jury was being empaneled for the trial of another case.

The only question about this conduct is whether it was in
violation of V. S. 1232, which reads:

''If a party in whose favor a verdict is rendered, during
the same term of court, gives to a juror in the cause, knowing
him to be such, any victuals or drink or procures it to be done,
by way of treat, either before or after such verdict. the same, on
proof thereof, shall be set aside and a new trial granted.''

In *Carlisle et ux.* v. *Sheldon,* 38 Vt. 440, the distinction is
clearly drawn between giving food to a juror as hospitality and
by way of treat, but in this case no such question arises, for it
is found that the cigars were furnished for the latter purpose.
It was held in *Baker* v. *Jacobs,* 64 Vt. 197, 23 Atl. 588, that
treating jurors with cigars was an act within the intendment of
the statute.

Courts have differed in their decisions respecting the mis-
conduct of counsel and jurors during the trial of causes, some
holding that the party moving to set aside a verdict must show
that it was affected by such misconduct, others, that the pre-
sumption of prejudice arises from the misconduct and must be
rebutted by the successful party. These questions have been
before this Court upon various statements of facts. In *McDan-
iels* v. *McDaniels,* 40 Vt. 363, friends of the prevailing party
had conversations with jurors about the case on trial; *held,*
that conversations intended and calculated to influence the ver-
dict were a sufficient cause for granting a new trial, though not
shown to have influenced the verdict in fact, had without the
knowledge of the prevailing party, and listened to by the jurors
without understanding that they were guilty of misconduct.
In *Clement* v. *Spear,* 56 Vt. 401, the Court said that whether
the petitioning party had been harmed by the misconduct of

the juror is largely, but not wholly, determinative of whether a new trial should be granted; that the misconduct may be so gross that public policy would require the court to set aside the verdict, although the petitioner did not show it was particularly harmful to him.    See other cases cited in the opinion.

The conduct of the defendant's counsel in playing cards with several jurors then engaged in the trial which he was conducting, was reprehensible and subjected him and the jurors to the censure of the court.    It was well said in the opinion in *Shea* v. *Lawrence,* 1 Allen 167: "All trials by jury ought to be effectually guarded against the exertion of every improper influence, and the law will never allow a party to derive any possible advantage from it.    It is therefore an established and salutary rule of law, that the least intermeddling with jurors is a sufficient cause for setting aside a verdict."    It is a common remark of courts that too much care and precaution cannot be used to preserve the purity of jury trials.

Playing cards, unless for stakes, is a harmless amusement, but, if a party or his attorney may play cards with jurors one evening, why not every evening during a protracted trial and without the presence or knowledge of the opposing party or his counsel?    It is not the game, but the close relation in which the attorney places himself for hours with jurors, that is likely to be harmful.    It is the duty of lawyers to keep away from jurors, when out of the court room, during trials, and not to converse with them beyond the exchange of the usual salutations of the day.    They are bound to the highest honor and integrity and to the utmost good faith in the trial of causes.

The trial court failed to find that the verdict was affected by the misconduct of counsel.    It was not necessary that it should find that fact.    There was no occasion to inquire whether it affected the verdict or not.    The verdict should have been set aside upon grounds of public policy.    It is not necessary to decide whether or not it should have been set aside upon the third ground of the motion.    Upon the second ground,

*The verdict is set aside and new trial granted.*