Argued December 3, decided December 16, 1913, rehearing denied February 10, 1914.

## SANDSTROM *v.* OREGON-WASHINGTON R. & NAV. CO.*

(136 Pac. 878.)

**Trial—Misconduct of or Affecting Jury.**

1. It is the duty of counsel to keep away from jurors when out of the courtroom during trials, and not to converse with them beyond the usual salutations.

---

*The question whether treating juror is ground for reversal or new trial is discussed in a note in 19 L. R. A. (N. S.) 733.    REPORTER.

**Trial—Misconduct of or Affecting Jury.**

2. Where, as the jury was returning from viewing the premises, at the suggestion of some of the jurors, all of them were taken to a place of refreshment and given ice-cream by one of the attorneys, the jury should have been discharged, and a new one impaneled.

[As to furnishing refreshments to jury by successful party as ground for new trial, see note in Ann. Cas. 1912B, 747.]

From Multnomah: FRANK M. CALKINS, Judge.

This is an action by A. H. Sandstrom against the Oregon-Washington Railroad & Navigation Company, for damages to real property.   There was a jury trial and a verdict returned in favor of defendant, and from a judgment rendered thereon the plaintiff appeals. The facts appear in the opinion of the court.

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Schmitt & Schmitt,* with an oral argument by *Mr. L. E. Schmitt.*

For respondent there was a brief over the names of *Mr. William W. Cotton, Mr. A. C. Spencer* and *Mr. W. A. Robbins,* with an oral argument by *Mr. Robbins.*

Department 1.   MR. JUSTICE RAMSEY delivered the opinion of the court.

This is an action by the plaintiff to recover damages from the defendant for alleged consequential injuries to real property.

The plaintiff is the owner and in possession of lots 37, 38, 39, and 40, in block 177, of University Park in the City of Portland.   These four lots are 100 feet long, and each of them is 25 feet wide, and they, together, comprise a tract 100 feet square in the northwest corner of said block.   Block 177 is bounded on the north by Newark Street, on the south by Trenton Street, and on the west by Woolsey Street.   An alley 15 feet wide runs through the center of said block from

north to south, and the plaintiff's four lots are bounded on the east by said alley. Woolsey and Trenton Streets appear not to have been improved in any manner, and they are not traveled. Newark and Dana Streets were opened and traveled. The plaintiff has a six-room dwelling-house on his lots, which has been occupied by tenants most of the time while the plaintiff has owned said lots.

This action was commenced in February, 1912, or prior to that date. The plaintiff's second amended complaint was filed on February 17, 1912.

The plaintiff's house was erected on said premises prior to the time that the defendant constructed the tunnel and the excavation referred to below.

During the years 1909, 1910, and 1911 the defendant constructed a steam railroad along Dana Street, a short distance east of the plaintiff's said lots and house, and said railroad has been in operation ever since it was so built, and many trains pass along said street and through said tunnel every day, conveying passengers and freight. The defendant, in constructing said railroad along said Dana Street, made a large excavation in said street, and said excavation is the mouth or opening of the north end of a large tunnel constructed by the defendant for the use of its railroad; said tunnel being more than a mile long. The trains of the defendant pass through said excavation and said tunnel in carrying on the defendant's business as a common carrier.

The defendant owns lands on each side of said Dana Street, and it has constructed a large excavation along the east side of said block 177, and north of said block, and said excavation at the bottom thereof is about 75 feet wide, and at the top it is much wider. It is more than 50 feet deep, and covers the whole of said Dana Street on the east side of said block 177, and for some distance north of said block.

Newark Street runs east and west on the north side of said block 177, and to the east thereof, crossing said Dana Street at the northeast corner of said block. Said excavation on Dana Street completely blockades said Newark Street where said Newark Street crosses said Dana Street, making it impossible for the plaintiff or any other person to pass on horseback, or with any kind of vehicle, or on foot, from said Newark Street across or along said Dana Street, thereby preventing all travel from said Newark Street across or along said Dana Street.

The plaintiff's said lots abut on said Newark Street, and prior to the making of said excavation in said Dana Street the plaintiff and his tenants, when they had occasion to go to the business part of the City of Portland, or elsewhere, went from his said dwelling-house and lots east on Newark Street to Dana Street, and thence north on Dana Street, about 1,000 feet, to Columbia Boulevard, an improved public highway; but, since the defendant made said excavation in said Dana Street, it is impracticable for anyone to pass from the plaintiff's premises along said Newark Street via Dana Street to said boulevard. Since the making of said excavation, the plaintiff and his tenants have been compelled to pass from his said house and premises west along Newark Street to Fiske Street, and thence north on Fiske Street to said Columbia Boulevard, and the distance to said boulevard by that route is much greater than via Newark and Dana Streets.

The second amended complaint contains two counts— one for damages for blockading said Dana Street, and preventing the plaintiff and his tenants from passing to said Columbia Boulevard via Newark and Dana Streets, and the other for damages caused to the plaintiff's premises, and the use thereof by the smoke, soot, dust, vapors, and obnoxious gases escaping from the mouth of said tunnel and from said excavation, and

drifting over and upon the plaintiff's said premises, rendering them practically uninhabitable, etc. The mouth of the tunnel is 210 feet from the plaintiff's dwelling-house. Damages in the sum of $1,500 were claimed in each of said two counts. The court below granted a nonsuit as to the first count, and the jury found a verdict for the defendant on the second count. The plaintiff appeals, and claims that various errors were committed by the court below; but we find it necessary to pass on only one point.

After counsel for respective parties had made their opening statements to the jury, the attorney for the plaintiff requested that the jury be permitted to view the premises in controversy, and, this being agreed to by the attorney for the defendant, the court made an order that the jury visit and view the *locus in quo* in charge of the bailiff. The court then instructed the jury, *inter alia,* not to converse with any of the attorneys, and, in case they should desire anything pointed out in any particular place, they were directed to ask the bailiff concerning it, and the bailiff was authorized to ask the attorneys concerning such matters, so that the bailiff could point out all points which the jury desired to see, and they were directed by the court not to talk with anyone but the bailiff concerning the premises. The court charged them to do nothing that would prejudice their minds. They went to the premises and viewed them, and one of the attorneys for each party went also.

When the jury returned, and the court reconvened, the attorney for the plaintiff moved the court for an order discharging the jury, for the reason that, when the jury had viewed the *locus in quo* as directed, and before they returned, one of the attorneys for the defendant requested the jury to go into a place where refreshments, etc., were sold, and to partake of refreshments, etc., claiming that said jury were, by the attor-

ney for defendant, then and there treated to ice-cream, etc., and that said attorney paid for said ice-cream, etc., and that he also paid the car fare of the jury going to and returning from said premises.  Counsel for the plaintiff claimed that the attorney for the defendant, in doing the things stated, *supra,* was guilty of misconduct, and asserted that the plaintiff could not consent to continue the trial before said jury under the circumstances.

The attorney for the defendant then stated to the court, *inter alia,* that the attorney for plaintiff instead of seeing that the bailiff was provided with funds to pay the car fare of the jury, failed to provide the funds, and said that he went to the attorney for the plaintiff, and asked him if anybody had provided funds for the jury's transportation, and the attorney for the plaintiff said, "No," and that he (the attorney for the defendant) then said that he would gladly do it.  The attorney for the defendant said that he paid their fare with the understanding that he was doing it "for one of these gentlemen."  The attorney for the defendant said, also, that, after the jury had walked half a mile through brush and sun, and had walked back to the corner, they all sat down at a store, and while they were sitting there two or three men (of the jury) spoke, and said, "You attorneys ought to set up the ice-cream," and that he waited, and "this man" (the attorney for the plaintiff) did not say a word, and that finally the attorney for the defendant said, "I will, if that is the way you feel about it, after that walk," and he says that they went into the store and he bought ice-cream, and paid for it, and that he paid for the transportation of the jury back, and "did it simply because this man [the attorney for plaintiff] didn't."

Mr. Stewart, the bailiff in charge of the jury, says that some of the jury said that they thought some of

the counsel should provide ice-cream, and that the attorney for the defendant said, "Well, see here, I will go in and see what they have got." He says that this attorney went into the store, and found that they had what was desired, and then the attorney asked everybody in to partake of it, and that not one of them refused. He says that not a word was said concerning the case. He says, also, that this act of kindness on the part of the attorney for the defendant in treating them to ice-cream "was appreciated by all."

There was no dispute as to the facts. Some of the jurors suggested that the attorney should treat to the ice-cream. The attorney for the plaintiff did not accede to the request; but the attorney for the defendant did, and invited them into the store, and treated them to ice-cream. These facts are set forth in the bill of exceptions. Statements were made by the attorneys for the parties who were present, and by the bailiff in charge of the jury, and these statements do not materially differ. The court below overruled the motion to discharge the jury, and instructed the jury to disregard the whole matter in trying the case and in agreeing upon a verdict. The plaintiff excepted to the refusal of the court to discharge the jury, and, after the verdict for the defendant was rendered, he moved for a new trial, and his motion was based, partly, on the said misconduct of the plaintiff and its attorney, etc. Every party to litigation is entitled to a fair and impartial trial.

1, 2. It is the duty of counsel to keep away from jurors when out of the courtroom during trials, and not to converse with them beyond the usual salutations: 38 Cyc. 1826.

29 Cyc., pages 803, 804, says:

"It is generally a ground for a new trial that members of the jury were entertained or treated during the trial by the successful party, or by his attorney, or

agent, especially that a juror or jurors were furnished with intoxicating liquors by or on account of such party.''

In *Ensign* v. *Harney,* 15 Neb. 330 (18 N. W. 73, 48 Am. Rep. 344), the facts were that two jurors applied to one of the defendant's attorneys for his horse and buggy to convey them home and return, and the attorney complied with the request. A verdict having been rendered for the defendant, a motion for a new trial was made, based in part on said facts, and the Supreme Court of Nebraska, passing on said point, says:

''Unless fair-minded, unbiased jurors can be selected, a trial becomes a mere farce, dependent not upon the merits of the case, but upon extraneous circumstances, such as the bias, prejudice, or interest of the jury. * * Where a juror is accepted as being impartial, he must remain so during the trial. To permit him to accept favors from either party is to put him under obligations to such party, the tendency of which is to bias his judgment. Nor is it material that such favors were not intended to influence the juror, as it cannot be determined how far they may have had that effect, and such misconduct will vitiate the verdict.''

In *Springer* v. *State,* 34 Ga. 379, the facts were that one of the attorneys for the state, pending the trial, at the request of two jurors, fed their horses overnight, without charge, and, a verdict of guilty having been found, a motion for a new trial was made, based on said facts, and the Supreme Court granted a new trial, saying, *inter alia:*

''The honor of the bar and the perfect purity of a jury alike, demand their entire separation, in their personal and social intercourse, whilst trials are progressing. However harmless in themselves, as was the conduct of our respected brethren in these cases, we feel ourselves called upon, in this and every case where this separation is not preserved with the utmost care, to evince, in the most decisive manner, our pur-

pose to shut up every avenue through which corruption or the influence of friendship could possibly make an approach to the jury-box.''

In *Redmond* v. *Royal Ins. Co.,* 7 Phila. (Pa.) 167, the facts were that during a recess in the trial several jurors went to a restaurant, kept by a person interested in the verdict, and there partook of refreshments for which they did not pay, and the court, passing on a motion for a new trial, says:

''But we look upon the conduct of the jurors as calling upon us for marked condemnation, and we think it should be dealt with in such a way as most likely to deter and prevent a similar occurrence.  We therefore set the verdict aside, and grant a new trial.''

In *Walker* v. *Walker,* 11 Ga. 206, the court says:

''When a juror has been impaneled to try a cause, and during the trial, and before he has rendered his verdict, he shall be entertained by either of the parties, at their expense, and the verdict be in favor of the party so entertaining the juror, the verdict will be set aside.''

In *S. & M. M. Co.* v. *Showers,* 6 Nev. 291, the syllabus of the court is:

''The rule that a verdict in favor of a party who treats or entertains the jury will be set aside applies to any treating after they are sworn and before they agreed upon their verdict, whether once or several times, by design or inadvertently, in the presence of the officer or in the absence, and whether it might be called for or uncalled for by the proprieties of life.''

In *Steenburgh* v. *McRorie,* 60 Misc. Rep. 516 (113 N. Y. Supp. 1122), the court, speaking of the treating of jurors to cigars by an attorney, says:

''The act of treating the jury gives rise to a suspicion of attempted improper influence.  If the court can be satisfied, in considering any irregularity or misconduct on the part of jurors, or of the parties, or of their attorneys, or of the court, that the party com-

plaining has not or could not have sustained any injury from it, the verdict will not be set aside. In this case it cannot be seen that the plaintiff could not have been, nor that he was not, injured by the treating of the jury. It is impossible to measure or estimate the effect upon the minds of the jury of the act complained of, or its possible or probable effect upon their verdict.''

In 1 Hayne, New Trial (3 ed.), Section 48, the author says:

''So where a juror, during the trial, spent the night at the house of one of the parties, and was entertained free of charge, a verdict in favor of such party was set aside. So where, during the trial, two jurors spent the night at the house of counsel for the successful party, the verdict was set aside. So where, during a trial for robbery, one of the counsel for the prosecution, at the request of two of the jurors, kept their horses overnight for them, without charge therefor, a verdict against the prisoner was set aside. So where, during a trial, several of the jurors went to a restaurant, kept by a person who was chiefly interested in the verdict, and there partook of refreshments for which they neither made nor were asked to make compensation, the verdict was set aside.''

In this case the attorney for the defendant, at the suggestion of some of the jurors, invited all of the jurors into a place of refreshments, and there treated them to ice-cream. It was misconduct in the jurors to suggest that the attorneys should treat them, and it was gross misconduct on the part of the attorney for the defendant to accede to such suggestion, and treat them to refreshments.

It is impossible for anyone to know what effect, if any, such treating had with the jury; but it is certain that it was misconduct that should not be passed by lightly, and the only effectual way to put a stop to such conduct is to set aside the verdict. While the attorney may have acted in good faith, and the jury may not have been influenced by his and their misconduct,

yet it is not possible to know that it had no effect in the decision of the case. The bailiff says that his kindness "was appreciated by all."

The attorney himself evidently believed that he made a mistake, for, when the motion to discharge the jury was made, he expressed his willingness to consent thereto.

The trial court should have discharged the jury and impaneled a new one, and, in refusing to do so, it erred.

The judgment of the court below is reversed and a new trial is ordered.

REVERSED: NEW TRIAL ORDERED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.