For the reasons above stated the order appealed from is reversed.

---

## STATE v. OLIVER SNOW.[1]

July 2, 1915.

Nos. 19,112—(4.)

**New trial — misconduct of jurors — close association with interested party.**

Where misconduct on the part of jurors is without the prompting or the knowledge of the prevailing party, the verdict will not ordinarily be set aside, unless there is reasonable cause to believe that the misconduct was prejudicial to the moving party. The use of intoxicating liquors by a juror while the trial is in progress, if it does not result in intoxication, does not vitiate the verdict, if without the knowledge or participation of the prevailing party. But where, during the course of a jury trial, a person interested in the result associates much with the members of the jury, meeting with them during the recesses of the court, walking to and from the court house with them, talking with them, and generally keeping in their company and associating and drinking with them in saloons, the jurors permitting such association and participating in it, there is such misconduct as will vitiate any verdict favorable to the interest of such meddler.

Defendant was charged with the paternity of an illegitimate child. He was tried in the district court for Sherburne county before Giddings, J., and a jury which found him guilty as charged in the com-

[1] Reported in 153 N. W. 526.

---

Note.—The authorities passing upon the consumption of liquor by the jury as ground for new trial or reversal are reviewed in a note in L.R.A.1915C, 302.

For cases passing upon treating jurors as ground for new trial or reversal, see notes in 19 L.R.A.(N.S.) 733 and 49 L.R.A.(N.S.) 889.

plaint. Defendant's motion to set aside the verdict and for a new trial because of misconduct on the part of the jurors who tried the case was denied. From the order denying the motion, defendant appealed. Reversed and new trial granted.

*J. D. Sullivan,* for appellant.

*George H. Tyler,* for respondent.

HALLAM, J.

This proceeding is brought to charge the defendant with paternity of an illegitimate child. The jury found against the defendant. The evidence is sharply conflicting. No useful purpose would be served by reviewing it in detail. We think there is evidence sufficient to support a verdict. Nevertheless, we regard the case as a close one and the guilt of the defendant not free from doubt. This is important as bearing upon the materiality of the matters to which we are about to refer.

One ground urged for a new trial is misconduct on the part of the jurors who tried the cause. We approach the consideration of this question with full appreciation of the weight to be given to the determination of the trial court in such cases. We approach the question also with full realization of the fact that the trial judge had better opportunity than we have of knowing and of observing the jurors and the persons concerned, and of determining the effect of any misconduct, and realizing full well the care with which the trial judge who presided in this case endeavors to safeguard judicial trials from improper influences. Yet we are constrained to believe that the trial judge failed to give sufficient importance to some of the charges made and which were not met by denial, and that conditions existed during the trial of this case which were prejudicial to defendant and which we cannot ignore.

The affidavits on behalf of defendant make many charges that are directly denied, but there are some charges explicitly made that the affidavits presented by the state do not deny. It is alleged that John Warrington, the father of the complaining witness and also one of the witnesses for the state, and a person interested in the outcome of the litigation, "associated a great deal with the members of the jury,

meeting them during recesses of the court, talking with them and generally keeping in their company." That on the first day of the trial after adjournment of court he walked down from the court house in company with a number of the jurors, and that they were talking and conversing together. That such jurors went directly to the saloon of the Blanchette hotel and that Warrington entered the saloon immediately thereafter. That he drank there with members of the jury. There is no sort of denial of any of these facts, except the general statement of Mr. Warrington that the jurors were strangers to him and that he did not buy liquor for them. Manifestly those statements do not meet the charges made.

There are other charges, the denial of which is unsatisfactory. For example, the charge is made that Warrington stated to members of the jury that they "could have all they could drink if he won the case." The denial of this is that Warrington did not state that "he would buy all they could drink if he won the case, or any words to that effect." It may be that this denial was intended to be full and complete, but in fact it was evasive. But we do not rest this opinion on any doubtful state of facts. We rest it upon the uncontradicted facts.

The books are full of cases in our own state and elsewhere involving applications for a new trial on the ground of misconduct of jurors. Where the misconduct is without the knowledge or participation of the successful party, much liberality is indulged in sustaining the verdict, notwithstanding such misconduct. It is not the policy of the law to punish the successful litigant for the sins of the jury. Eich v. Taylor, 20 Minn. 330 (378); State v. Conway, 23 Minn. 291. And, if it does not appear that the misconduct was occasioned by the prevailing party or by someone in his behalf, the verdict will not ordinarily be set aside, unless there is reasonable cause to believe that the misconduct was prejudicial to the moving party. Koehler v. Cleary, 23 Minn. 325; Helmbrecht v. Helmbrecht, 31 Minn. 504, 18 N. W. 449; Woodbury v. City of Anoka, 52 Minn. 329, 54 N. W. 187.

But where the misconduct is upon the prompting or with the participation of a party to the action, or of a person interested in its

outcome, a different case is presented and the courts have dealt vigorously with such misconduct. The acceptance by jurors of refreshment or favors at the expense of interested persons has been considered decisive misconduct and has been uniformly held to be ground for a new trial. Sandstrom v. Oregon-Washington R. & N. Co. 69 Ore. 194, 136 Pac. 878, 49 L.R.A.(N.S.) 889; Scott v. Tubbs, 43 Colo. 221, 95 Pac. 540, 19 L.R.A.(N.S.) 733; Rainy v. State, 100 Ga. 82, 27 S. E. 709. The use of intoxicating liquor by a juror during the progress of the trial, not resulting in intoxication, was held in some early cases to vitiate the verdict, even though without the knowledge or participation of the prevailing party. People v. Douglass, 4 Cow. (N. Y.) 26, 15. Am. Dec. 332. This doctrine is not now generally recognized. Commonwealth v. Fisher, 226 Pa. St. 189, 75 Atl. 204, 26 L.R.A.(N.S.) 1009, 134 Am. St. 1027, 1035, and it is not the rule in this state. State v. Madigan, 57 Minn. 425, 59 N. W. 490; State v. Salverson, 87 Minn. 40, 91 N. W. 1. But familiar association in drinking places between jurors and interested persons may well constitute misconduct, regardless of who bears the expense. In Vollrath v. Crowe, 9 Wash. 374, 37 Pac. 474, the conduct of a juror in drinking with an interested party was severely scored, though a new trial was granted upon other grounds. In Austin & McCargar v. Langlois, 81 Vt. 223, 69 Atl. 739, a verdict was set aside because a juror had played cards, though not for stakes, with the defendant's attorney. The ground of the decision was, not that there was anything vicious in a game of cards, but that the close relation in which the attorney and the jurors were placed was likely to be harmful.

If jurors are to dispense justice fairly, and if their verdicts are to retain the confidence and respect of litigants and the public generally, the purity of jury trials must be jealously guarded. We know of nothing more likely to breed distrust of the result of a jury trial than undue familiarity between jurors and persons interested in the outcome of the litigation. In the nature of things it is impossible to directly prove prejudice from such association, and exact proof is not required. Koehler v. Cleary, 23 Minn. 325; Akin v. Lake Superior Con. Iron Mines, 103 Minn. 204, 114 N. W. 654, 837. It

130 M.—14.

may not be easy to say just what extent of association between parties and jurors will be required to warrant setting aside a verdict. It is not necessary that we should here draw the line. In dealing with such questions the court should not be captious enough to act upon trifles, but, if the association between the jurors and the prevailing party is such as to cause well-grounded fear as to the fairness of the verdict, it should be set aside. We think the facts disclosed here are sufficient to require us to set aside this verdict.

What we hold is that, where, during the course of a jury trial, a person interested in the result associates a great deal with members of the jury, meeting with them during the recesses of the court, walking to and from the court house with them, talking with them, and generally keeping in their company and associating and drinking with them in saloons, and the jurors permit that sort of association and participate in it, they are guilty of such misconduct as must vitiate any verdict favorable to the interest of such meddler. Jurors must forego such social diversions with interested persons during the progress of a lawsuit, the merits of which they are to decide.

Order reversed and new trial granted.

Chief Justice Brown did not sit.