McCAULL–DINSMORE    CO.,    Appellant,    *v.*    JACKSON, Respondent.

(No. 4,112.)

(Submitted April 10, 1920.  Decided May 3, 1920.)

[189 Pac. 771.]

*Sales—Contracts—Breach—Nonperformance by Buyer—Rights of Seller—Rescission—Notice.*

Contracts—Sales—Breach by Buyer—Rights of Seller.
  1.  Where one party to a contract communicates to the other his refusal to be longer bound thereby, the latter is excused from further performance on his part.
Same.
  2.  *Held,* that where a wheat buyer, under a contract which provided that upon delivery of the wheat to the railway company a bill of lading should be issued to the seller, who was to attach a sight draft payable at Duluth, Iowa, unqualifiedly advised the seller after referring to a threatened railroad strike, that four days thereafter it would cease honoring drafts accompanying bills of lading containing a

loss and damage exemption clause, and the seller upon inquiry was informed that no bill of lading would be issued without such clause, he was justified in treating the contract as repudiated and in reselling the wheat.

Same—Breach by Buyer—Election of Seller to Consider Contract at End—Notice.

3. Where plaintiff, in an action for breach of contract of sale, himself repudiated in advance a material provision thereof, defendant was under no obligation to give notice of his intention to consider the agreement at an end and resell.

*Appeal from District Court, Madison County; Wm. A. Clark, Judge.*

ACTION by the McCaull-Dinsmore Company, a corporation, against P. V. Jackson. From a judgment for defendant, plaintiff appeals. Affirmed.

*Messrs. Day & Mapes,* for Appellant, submitted a brief; *Mr. E. C. Day* argued the cause orally.

Did the defendant have the right to abandon or rescind the contract for the delivery of the wheat in controversy upon the receipt of the circular letter offered in evidence? The refusal on the part of the obligor that will excuse the obligee from complying with the terms of his contract must be a distinct and unqualified refusal to be further bound by the contract. (*Fay* v. *Oliver,* 20 Vt. 118, 49 Am. Dec. 764; *Way* v. *Johnson,* 5 S. D. 237, 58 N. W. 552; *Lake Shore & M. S. Ry. Co.* v. *Richards,* 152 Ill. 59, 30 L. R. A. 33, 38 N. E. 773; *Gerli* v. *Poidebard S. Mfg. Co.,* 57 N. J. L. 432, 51 Am. St. Rep. 612, 30 L. R. A. 61, 31 Atl. 401.) The principle to be applied in all of these cases is whether or not the nonperformance or statement of intention amounts to an abandonment of the contract or a refusal to perform. (*West* v. *Bechtel,* 125 Mich. 144, 51 L. R. A. 791, 84 N. W. 69; *Brady* v. *Oliver,* 125 Tenn. 595, Ann. Cas. 1913C, 376, 41 L. R. A. (n. s.) 60, 147 S. W. 1135.)

One party cannot make a valid cancellation of a contract of sale and thus escape performance. A mere assertion of inability to carry on a contract of sale is no notice of repudiation, nor does a mere threat to abandon a contract, constitute a

breach. (*Lonsdale Grain Co.* v. *Canton Milling Co.,* 195 Mo. App. 452, 193 S. W. 853.) A party having a right to rescind a contract of sale, and who elects to do so, must give notice to the seller. The notice for the rescission must be clear and unambiguous and convey an unmistakable purpose to insist on the rescission. (*Wright* v. *Bristol Patent L. Co.,* 257 Pa. St. 552, 101 Atl. 844.) If anything is said or done by the buyer to induce the seller to believe that he had waived the failure to make payment according to the terms of the original contract, he cannot afterward, when the conditions have been changed, claim a breach by reason of such noncompliance. (*Wallingford* v. *Bushton Grain & Supply Co.,* 100 Kan. 207, 164 Pac. 275.)

*Mr. M. M. Duncan,* for Respondent, submitted a brief and argued the cause orally.

The appellant argues in its brief that the respondent was compelled to notify the appellant immediately on the receipt of its letter of repudiation that he rescinded the contract. This argument is without merit. The suit was brought by appellant for damages and for breach of contract. The respondent defends the action on the ground of its breach by appellant, which breach was of a condition precedent to any act to be performed thereunder by him. A party who fails to perform according to the terms of his contract cannot maintain an action on the contract. (*Dermott* v. *Jones,* 64 U. S. (23 How.) 220, 16 L. Ed. 442 [see, also, Rose's U. S. Notes].)

In this character of actions where the contract has been repudiated or abandoned, or where notice of rescission would be futile, no notice of rescission is required to be given. (*Town* v. *Jepson,* 133 Mich. 673, 95 N. W. 742; *Triplett* v. *Rugby Distilling Co.,* 66 Ark. 219, 49 S. W. 975; 35 Cyc. 154 (9). As to executory contracts, such as this, the rule is that where a party repudiates in advance his obligations thereunder, and refuses to be longer bound thereby, communicating such repudiation to the other party, the latter party is excused from

further performance or tender thereof. (6 R. C. L. 1012; *Bogardus* v. *New York Life Ins. Co.*, 101 N. Y. 328, 335, 4 N. E. 522; *Ward* v. *Kadel*, 38 Ark. 174; *Mansfield* v. *New York etc. R. R. Co.*, 102 N. Y. 205, 6 N. E. 386; *McCormick* v. *Tappendorf*, 51 Wash. 312, 99 Pac. 2.)

It is self-evident that the appellant is seeking in this action to take advantage of the nonperformance of that which it prevented. This is not allowable. (*McDonald* v. *Mountain Lake Water Co.*, 4 Cal. 335; *Beach* v. *Covillard*, 4 Cal. 315.)

In the case at bar, had the strike gone into effect, or had the price of wheat fallen below the contract price, after the receipt of the letter of repudiation the remedy of the respondent would have been an action for damages against appellant. (*Davis* v. *Bronson*, 2 N. D. 300, 33 Am. St. Rep. 783, 16 L. R. A. 655, 50 N. W. 836; *Chicago Bldg. etc. Co.* v. *Barry* (Tenn.), 52 S. W. 451.)

The rule seems to be well settled that when the buyer countermands his order for goods under an executory contract before the goods are delivered, it is notice to the other party that he elects to rescind his contract, and submit to the legal measure of damages resulting from the breach. (*Heiser* v. *Mears*, 120 N. C. 443, 27 S. E. 117.)

There is some claim by appellant in its brief that respondent did not act promptly. The law is that the wrongdoer cannot make extreme vigilance and promptitude conditions of rescission. It does not lie in his mouth to complain of delay. (*Pence* v. *Langdon*, 99 U. S. 578, 25 L. Ed. 420 [see, also, Rose's U. S. Notes].)

Some suggestion has been made by appellant that it was the duty of the respondent to hold himself in readiness to perform the contract, notwithstanding the letter of repudiation, for the full period of forty days. After there has been a breach of contract by a party there is no liability on the part of the other party to it to hold himself in a position to perform the contract. (*Brazell* v. *Cohn*, 32 Mont. 556, 81 Pac. 339; note to

*Davis* v. *Bronson* (N. D.), 33 Am. St. Rep. 783; *Zuck* v. *Henry McClure & Co.,* 98 Pa. St. 541.)

Appellant's letter was a repudiation of the contract. (*Wester* v. *Casein Co.,* 206 N. Y. 506, Ann. Cas. 1914B, 377, 100 N. E. 488.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover damages for an alleged breach of contract. The defendant prevailed in the lower court, and plaintiff appealed from the judgment dismissing his complaint.

The facts of the case are not in dispute. On August 4, 1916, plaintiff and defendant entered into a contract by the terms of which plaintiff agreed to purchase from defendant, and defendant agreed to sell and deliver to plaintiff, 3,000 bushels of wheat at $1.16 per bushel, payable on delivery on board the cars at Norris, Montana, delivery to be made within forty days from the date of contract, and the grain to be shipped to plaintiff at Duluth. It was further understood between the parties, as a part of their agreement, that upon delivery the railway company would issue its bills of lading and deliver them to defendant, who should attach to them a sight draft on plaintiff, and forward them through his bank and its correspondents to Duluth, where the draft would be paid upon presentation.

The only form of bill of lading issued by the railway company contained a "loss and damage exemption clause," and this fact was known to the parties, and the contract was made with reference to it. On August 31, 1916, plaintiff sent to defendant the following letter:

"Helena, Mont., August 31, 1916.

"To Our Friends:

"Business houses the country over are preparing for conditions that will be forced upon them when the threatened railroad strike goes into effect, Monday next, September 4th. In

order to protect ourselves, from this date on we will accept drafts attached to bills of lading with delay in transit clause only. We will not honor drafts attached to bills of lading that have loss and damage exemption clause in them.

"Yours very truly,

"The McCaull-Dinsmore Co."

This letter was received by the defendant about September 4 or 5, after the strike order had been revoked, and the danger of the strike of the railway employees averted. Upon receipt of the letter, defendant made inquiry to ascertain whether a bill of lading without the loss and damage exemption clause would be issued, and, having determined that it would not be, he waited for several days, and then sold the wheat to another buyer at an advanced price, and notified plaintiff that he would not make delivery to it.

Two questions only are presented by the appeal: (1) Did the buyer's act in sending to the seller the letter of August 31 warrant the latter treating the contract as at an end? and (2) if a termination of the contract was admissible, could it be effected without first giving notice to the buyer?

While transactions of this character are sometimes treated [1] by the authorities under the heading "Rescission by Mutual Consent," the terms are somewhat confusing, since the element of "mutual consent" is wanting. Rather they should be considered from the standpoint of a repudiation by one party of the contract in whole or in part, which excuses the other party from performance or tender of performance. However, regardless of the designation, the rule of law which governs the transactions is well settled, and is stated succinctly in 6 R. C. L. 1012, as follows: "Where one party repudiates in advance his obligations under the contract and refuses to be longer bound thereby, communicating such repudiation to the other party, the latter party is excused from further performance on his part." The same principle is announced in 35 Cyc. 249, as follows: "The failure of the seller to perform is excused when performance is prevented by the acts and conduct

of the buyer, as, for example, by acts or conduct preventing the seller from obtaining the goods to fulfill his contract, by acts and conduct indicating an intent to abandon the contract and refuse performance thereof, or by the failure of the buyer to perform conditions imposed on him by the contract." (*Slauson* v. *Albany R. Co.*, 60 N. Y. 606; *McCargar* v. *Langlois*, 81 Vt. 223, 69 Atl. 739; *Eastern Forge Co.* v. *Corbin*, 182 Mass. 590, 66 N. E. 419; *O'Neill* v. *Supreme Council A. L. of H.*, 70 N. J. L. 410, 1 Ann. Cas. 422, 57 Atl. 463; *Providence Coal Co.* v. *Coxe Bros. & Co.*, 19 R. I. 380, 582, 35 Atl. 210; *McCormick* v. *Tappendorf*, 51 Wash. 312, 99 Pac. 2.)

Counsel for appellant find no fault with the rule, but insist **[2]** that the facts do not bring this case within it; that the letter of August 31 was not a repudiation of any material provision of the contract, but only a warning notice to become effective in the event that the then impending strike materialized, and since it did not materialize, and the strike order was annulled before defendant received the letter, he was not justified in refusing to deliver the grain. To this contention the answer may be interposed that the reservation contained in the letter was not made contingent upon the strike going into effect and was not limited to the duration of the strike. The letter states distinctly that "from this date on * * * we will not honor drafts attached to bills of lading that have loss and damage exemption clause in them." It is true the letter refers to the threatened strike; but, if it was the intention of plaintiff to limit the operation of the notice to the duration of the strike, appropriate language to express that intention might have been employed, or, if it was the purpose to have the notice effective only in the event that the strike materialized, in all fairness it would seem that the duty to recall the letter within a reasonable time after the strike order was annulled rested upon the plaintiff, the party who injected the element of uncertainty into the transaction. Under the circumstances, the defendant was left to place upon the letter the interpretation which the language fairly war-

ranted, and in reaching the conclusion that it expressed a determination no longer to be bound by the provision for the payment of the draft we think the defendant was fully justified. It cannot be said that the provision of the contract thus affected was not a material one. Under it the defendant was assured that the grain would not be delivered to the plaintiff at Duluth until the draft was paid, and in this arrangement defendant found his only security for the purchase price of his grain. If he had shipped the grain under the conditions imposed by the letter of August 31, he would have been compelled to wait until the grain was delivered in Duluth before he received the whole or any part of the purchase price, and even then would have been without security, other than the personal liability of the plaintiff.

If this was a case of technical rescission, it is doubtless [3] true that the obligation would rest upon the defendant to notify the plaintiff before he put it out of his power to comply with the contract; but if the act of the plaintiff amounted to a repudiation of a material provision of the contract, and we think it did, then there was no duty imposed upon the defendant to give notice, and notice, if given, would have been without effect. (*Wood, Curtis & Co.* v. *Seurich,* 5 Cal. App. 252, 90 Pac. 51.)

We find no error in the record. The judgment is affirmed.

*Affirmed.*

Associate Justices Hurly, Matthews and Cooper concur.

Mr. Chief Justice Brantly, being absent, takes no part in the foregoing decision.