No. 23,885.

WILLIAM ZINN, a Minor, by CALVIN ZINN, his Father and Next Friend, *Appellee*, v. O. P. UPDEGRAFF, *Appellant*.

### SYLLABUS BY THE COURT.

1. COLLISION ON PUBLIC HIGHWAY—*Motorcycle and Automobile*—*"Rule of the Road" Interpreted*. The rule of the road, which requires a traveler in a vehicle on a highway to seasonably turn to the right when meeting a vehicle does not apply to one who is traveling outside of the traveled way.

2. SAME. One traveling on the highway in a vehicle on the right side of the traveled way, which is of ample width, smooth and unobstructed, is not justified in assuming that a vehicle approaching him on the highway, but traveling outside of the traveled way, will drive into the traveled way and to the other side thereof.

3. SAME—*Personal Injuries—Negligence Must Be Proven—Proximate Cause of Injury Must Also Be Shown*. A collision between two vehicles upon a highway, with resulting injury, is not sufficient to establish liability; but before plaintiff can recover he must allege and prove negligence of defendant which was the proximate cause of the collision.

4. SAME—*Negligence of Defendant and Contributory Negligence of Plaintiff—Both Questions for Jury*. The evidence examined and *held* that the question of the negligence of the defendant, and also the question of the contributory negligence of the plaintiff, were properly left to the jury.

5. SAME—*Proper Cross-examination of Party to Action*. When a party to an action is a witness in his own behalf it is error to restrict his cross-examination upon matters which clearly affect his credibility as a witness.

6. SAME—*New Trial—Newly Discovered Evidence*. It is not error for the court to refuse a new trial because of newly discovered evidence if, in view of all the circumstances, the newly discovered evidence would not be likely to change the result.

7. SAME—*Misconduct of Plaintiff—Soliciting Jury Service*. The fact that the plaintiff, at his solicitation, was put upon the panel of jurors at a term of court at which his case was to be tried, while a practice not commended, is not sufficient, standing alone, to require the court to grant a new trial because of misconduct of the plaintiff.

Appeal from Shawnee district court, division No. 1; JAMES A. MCCLURE, judge. Opinion filed March 10, 1923. Reversed.

*Eugene S. Quinton*, of Topeka, for the appellant.
*W. E. Atchison*, of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal by defendant from a judgment in favor of plaintiff in an action for personal injury resulting from a collision between a motorcycle driven by plaintiff and an automobile driven by defendant. The appellant assigns many errors.

There is but little controversy concerning the material facts in the case. What is known as the West Sixth street road is an improved highway extending from the city of Topeka, west to Gage park, about two miles distant. It is graded and paved through the center with an asphalt pavement twenty feet wide. On each side of the strip of pavement there is a nine-foot strip practically on a level with the pavement, having gravel near the pavement and grass and weeds growing at the outer part of the strip and a ditch at the outer edge for drainage purposes. At the place where the collision occurred the strip of gravel on the north side of the pavement was about three feet wide from the pavement to the grass and the distance from the edge of the grass on the north of the pavement to the edge of the strip of grass on the south of the pavement was about twenty-seven feet. It was forty-one feet from the center of the ditch on one side of the road to the center of the ditch on the other, and the ditch along there for some little distance on the north side of the road varied from a foot to two feet deep.

About eleven o'clock on a Sunday morning in May, plaintiff and Howard Parr, each having a motorcycle, went to the home of Paul Parr and took him and his wife for a ride. Mrs. Parr got on the motorcycle with Howard Parr, and Paul Parr got on the motorcycle with plaintiff, and they started west on the Sixth street road toward Gage park. The plaintiff, with Paul Parr riding on the frame of the motorcycle in front of him, was behind the other motorcycle a block and a half or two blocks. Plaintiff was riding a Harley-Davidson motorcycle, which had no extra seat for one to ride in front of the driver. As the two couples on the motorcycles went west on Sixth street they met defendant, who was driving a sedan automobile and who was coming east. The defendant was on the north side of the road, which would be his left-hand side, and was north far enough to be off the asphalt pavement, designed and ordinarily used for travel, the north two wheels of his automobile being on the grass near the ditch and the south two wheels being on the gravel north of the pavement. The first motorcycle passed the de-

fendant going to the south of him and on the asphalt pavement. The second motorcycle, driven by plaintiff with Paul Parr sitting in front of him, as they approached the defendant, was driving on the north side of the road, either on the north portion of the asphalt pavement or on the gravel on the north side of the road. As plaintiff and defendant approached each other, the plaintiff turned to his left, or to the south, to attempt to go around defendant, and in some manner the right side of his motorcycle near the front collided with the right side of the automobile at the back fender, or just where the back fender connects with the running board. The motorcycle had the foot rest on the right side broken and was thrown to the pavement and took a diagonal course across the street southwest, some part of the motorcycle dragging so as to mark or cut a distinct line in the asphalt. The plaintiff was seriously injured. Among other injuries his right leg was broken.

The witnesses testifying to the immediate situation of the cars and what took place at the time of the collision gave testimony in substance as follows:

The plaintiff, William Zinn, testified in substance: "I drove along on the north side of the street straight up the road west, driving about 22 to 25 miles an hour. Paul Parr was sitting on my motorcycle in front of me, sideways, both feet hanging on the south side. With him sitting in such a position he did not obscure my view. I had a clear vision ahead of me and could see past his body in front of me on the south side. My head was up about even with his body. As we got near the car I had to see around him to see the car. I did not see what part of the car struck my motorcycle. As I drove west I noticed the automobile coming over the hill on the north side of the road. It was near the ditch on the north side coming east. There wasn't room to pass it on the north side. The north wheel of the automobile was in the grass and the south wheel in the gravel north of the asphalt pavement. I stayed on the right side on the gravel north of the pavement until I saw something had to be done and when about 50 or 60 feet away from the car I turned to the left and tried to get out of his way by going to the south side of the road. I noticed just the instant as I turned he turned to the south or to his right, then it seemed as though he swerved his car to the north and the back end swung out and some part of the south side of the car struck the motorcycle. I was still on the north side of the center of the road. I don't know

what part of the car hit us.  I passed south of the automobile.  I hit the south side of the automobile.  The automobile was going ahead.  The motorcycle was knocked over and I was knocked off of it.  I do not remember what occurred after that.  When I first saw the automobile it was coming down the hill from the west on the north side of the road about a block ahead of me.  There was no other vehicle on·the road and nothing to prevent me from turning to the south side.  If I had turned south on the pavement and the car had come on straight down I would have missed him.  The automobile was not on the traveled way.  When about 50 or 60 feet in front of the automobile I was riding on the gravel.  I turned to the south; I don't know just how far."

Paul Parr testified in substance:  "I was riding on the motorcycle with the plaintiff, sitting sideways in front of the plaintiff, between the handlebars.  In this position the plaintiff could see to the left and in front.  In going out the West Sixth street road the other motorcycle was a block and a half or two blocks ahead.  I saw defendant's automobile coming east; defendant was on the north side of the road.  I saw the other motorcycle pass the defendant upon the south side of the defendant's automobile.  When the front motorcycle passed the defendant I heard my brother honk his horn and looked and noticed him go past the car on the south side and motion back to the plaintiff.  The plaintiff and myself were on the north side of the road going upgrade and kept getting closer to the automobile.  We drew our motorcycle a little farther north all the time and kept on so until we saw something would have to be done immediately, so we swerved to the left-hand side but we did not get over far enough and the defendant struck the right-hand side of our motorcycle and ditched us.  The automobile did not change its course whatever so far as I noticed.  We were still on the north side of the road when the automobile struck us.  We tried to turn over far enough so as·not to hit him and failed to do it.  It was a glancing blow; could not see what part of the car struck.  It was the right-hand side of the car, that would be the south side of the car.  The motorcycle was struck on the right-hand side, knocking the motorcycle over, pinning my feet beneath the machine and we slid several yards up the road, the machine being still in gear.  There was a mark on the road, slanting across the road from the north side, from the northeast to southwest.  The other motorcycle was about two blocks ahead of us.  There was

nothing else on the road except the two motorcycles and the automobile. When I first saw the automobile it was on the north side of the road, coming straight down. We continued to watch the car as we went up the road and it came straight down on the north side all the way. There were two wheels of the automobile in the grass and two wheels on the gravel and there was nothing on the asphalt pavement. I think we were about 150 feet from the automobile when we turned the motorcycle to the left to avoid the automobile. At this point the motorcycle was driven on the gravel. When we turned south the automobile still had two wheels on the grass and two wheels on the 'gravel. We had turned south to about three feet from the center of the pavement, and we started to turn back and collided with the automobile. I sat in front of plaintiff and could see it all. The defendant had not turned at all. I couldn't say what part of the car hit the motorcycle. I did not see the automobile when we hit. The automobile did not hit us head-on. The fender of the automobile hit us. It was not the front fender. The front motorcycle passed the automobile in safety and we could have done so if we had gotten over. There was nothing to interrupt our getting over. We were about half a mile away when we first saw him."

Mr. Blanchard testified in substance: "I saw the collision. I was east on the road between one-half and three-quarters of a mile, and the lay of the road was such I could see them plainly. I saw the automobile when it came over the hill from the west on the north side of the road. The first motorcycle passed the automobile on the south side of it. I saw the second motorcycle going west up the hill on the north side of the road and the automobile coming down the hill. The motorcycle made a quick turn to the left to get by the automobile. The automobile came right on. The motorcycle tipped over and swerved clear over to the south side of the road it looked like, and stopped there. The motorcycle hit the side of the car somewhere. There wasn't anything between me and the place of collision to prevent my seeing it. I did not see anything else in the road but the two motorcycles and this car until after the motorcycle ran into the car. The automobile was coming down the hill with the north wheels in the grass and the south wheels on the gravel. There was nothing to obstruct my view. I saw the motorcycle going west on that strip of gravel and the car coming east on the north side of the road and I was watching them until I

saw them come together, and it looked to me like they were going to hit right head-on, and the automobile, from where I was, looked like it made a slight turn to go over to the other side of the road and then turned right back so the motorcycle had to go the other way, and just as he made the turn around him he hit him somewhere, I could not tell where from where I was. The motorcycle made a quick turn to the left. The automobile came right on. The automobile had turned slightly south, then back to the north."

Charles A. Brown testified in substance that he was driving west on the Sixth street road the morning in question; that the two motorcycles passed him shortly before the collision and that he was looking at the motorcycles and the defendant's automobile and saw the collision. That plaintiff was driving on the right-hand side of the road; that when he got within about twenty feet of the car, plaintiff turned to the left; that the automobile was occupying the whole road on the north side so plaintiff could not turn to his right; that when the motorcycle turned to the south, the automobile turned to the south, when they came together, but the car did not stop after the collision but turned to the other side of the road and passed the witness on the south. That the collision occurred north of the center of the road; that when the collision occurred the witness was in a couple of blocks of them and saw it all. As they kept getting closer together he saw plaintiff turn out and then defendant turn.

Mrs. Rosa Brown, wife of Charles Brown, and their daughter, Martha, were in the car with him and gave testimony substantially the same as he did.

The occupants of the front motorcycle, Howard Parr and Mrs. Paul Parr, testified that they were riding a block and a half or two blocks ahead of the plaintiff; that they saw the defendant driving east on the north side of the road. They passed defendant's automobile, which was then going east on the north side of the road with the north wheels on the grass and the south wheels on the gravel. They were going west on the asphalt pavement and had no trouble passing the defendant. The automobile was traveling north of the asphalt pavement.

Photographs put in evidence show that the mark or cut in the asphalt pavement commenced at or near the north side of the asphalt and extended diagonally south and west across the asphalt pavement. From the evidence it appears that the automobile was

going about twenty to twenty-five miles an hour and the motorcycles traveling at about the same speed or a little faster. Howard Parr testified that he examined the mark on the pavement the same day, soon after the collision, and that it started at the north side or about a foot south of the north edge of the asphalt pavement and went in a southwesterly direction across the asphalt pavement and could be plainly seen. Calvin Zinn testified that he made measurements within a day or two after the collision, and that he observed that the mark in the pavement started about three feet south of the edge of the pavement. Paul Parr examined it a few days after the collision and noticed the mark showing about three feet north of the center of the asphalt. The collision occurred north of where the mark on the pavement began.

Appellant contends that the evidence does not show any negligence on the part of defendant; that defendant had given the entire traveled way to plaintiff and that plaintiff was negligent, as a matter of law, in having a passenger riding in front of him on his motorcycle, which partially obstructed his view, and made the machine more difficult to handle, and in persisting in riding his motorcycle so as to have a collision with the defendant when he could have avoided it by keeping on any portion of the traveled way.

The appellee contends that the defendant was negligent in driving on the north side of the road, and that his negligence in so driving up to the time and immediately prior to the collision and then turning to the right after the motorcycle was turning to the south was the proximate cause of the collision.

It is clear that the collision occurred north of the asphalt pavement and that the actual situation of the vehicles at the time of the collision was in one of the two following positions: If defendant had turned slightly to the south and back again to the north, his car might have been setting at a slight angle to the northeast, enough to enable the plaintiff passing him on the south and going straight west to pass the right front wheel and fender of the automobile and collide with the right hind fender. The testimony of William Zinn, Mr. Blanchard, the Brown family, might bear out that theory, though none of them saw exactly how it did occur. Or the collision might have occurred by reason of the defendant keeping straight in his course, going east north of the asphalt pavement, and by the plaintiff turning to his left and to the south until he got about three feet north of the center of the asphalt pavement, and

then turning diagonally to the right and colliding with the automobile at the right hind fender as testified to by Paul Parr, the witness who was riding in front of plaintiff on the motorcycle. Obviously, if the collision occurred in the manner last stated, the defendant would not be negligent.

It is the contention of the appellee that the defendant was negligent in driving east on the north side of the road, on his left-hand side, and in not seasonably turning to the right of the center of the traveled way upon meeting the plaintiff. In his brief he says:

"The principal negligence alleged in the petition and proven at the trial, was the act of the defendant in remaining on the left-hand side of the road and not turning to the right when he saw the motorcycle approaching, as the road was clear on his right at the time and he had ample time to turn."

In Berry on Automobiles it is said:

"The rule is that persons in vehicles meeting on the highway shall each seasonably turn to the right to allow the other to pass without collision." (3d ed., § 234; see, also, Huddy on Auomobiles, 6th ed., p. 436, and *Giles v. Ternes,* 93 Kan. 140, 143 Pac. 491.)

In regard to the liability of one traveling on the wrong side of the road, in Huddy on Automobiles it is said:

"The failure of the driver of a vehicle to turn to the right upon meeting another vehicle on the highway is not generally negligence *per se,* though decisions are to be found holding such conduct to be negligence as a matter of law. On the contrary, as a general rule, a question of the defendant's negligence remains one for the jury. . . . Properly considered, the rule of the road is a rule of negligence, and the fact that a person was on the wrong side of the road when a collision took place does not *per se* make him liable for damages, but his liability is determined by the rules of law applicable to cases of negligence." (6th ed., p. 439, 440.)

And in the same authority it is said:

"Even though the plaintiff has violated the law of the road, there always remains the question whether the violation was a proximate cause of his injuries; if not the proximate cause, the violation does not bar his right of action." (p. 474.)

In Berry on Automobiles it is said:

"Automobiles are subject to the general law governing the use of vehicles on public highways and are not entitled to the right of way over other conveyances. . . . So one traveling on the right side of the road, when he is injured by another driving on the wrong side, has no cause of complaint unless he exercises reasonable care for his safety." (§ 233.)

Thus it will be seen from the authorities, that under the law of the road a person may use any part of the traveled way, but on

meeting another vehicle he should seasonably turn to the right of the center of the traveled way, that is, that he should turn in sufficient time to enable the one approaching him to pass without collision, but if he does not do so the question of whether or not he is liable for injuries resulting from a collision will depend on whether or not his being on the left side of the road and failing seasonably to turn to the right was the proximate cause, or one of the proximate causes, of the injury.

In this case the appellant contends that the rule of the road is not applicable because of the fact that defendant was entirely outside of the traveled way. Upon this question it is said in Huddy on Automobiles:

". . . And if one gives up the entire beaten track of the road to another traveler, he is not chargeable with negligence because he is on the left side of the highway." (6th ed., p. 444.)

In Berry on Automobiles it is said:

"The law does not require unnecessary things to be done. . . . Thus, it was not necessary for an operator of an automobile to turn to the right when meeting a vehicle which was being driven outside of the traveled part of the road, and which had sufficient room to pass." (3d ed., p. 248.)

In the same authority it is said:

"Where one is driving outside of the traveled way, the other cannot presume that he will turn to the right when it is obvious he is not going to do so." (p. 250.)

In *Baker v. Zimmerman*, 179 Iowa, 272, 161 N. W. 479, it was held in an action for damages from the collision of automobiles on a public road, no presumption arose against defendant from the fact that he was driving his car on the wrong side of the road, where if plaintiff proceeding along the traveled way had continued his course, he would not have been interfered with. If plaintiff and defendant were moving in opposite directions on the traveled way toward each other, each might assume that the other would yield half the way though if defendant was moving out of the traveled way plaintiff could not assume that he would do what he was evidently not about to do, that is, pass to the right.

In the opinion it was said:

". . . If the defendant was proceeding north on the grass and away from the traveled way, and the plaintiff was proceeding along the traveled way, and if, had he continued in his course, he would not have been interfered with, then it could not well be said, as a matter of law, that defendant should be

presumed to have been negligent. Negligence is a relative term, and as, in such circumstances, plaintiff would have been given the entire traveled way, there could not well have been, in doing what he did, a violation by him of the law of the road." (p. 283.)

In *Hagenah v. Bidwell,* 46 Cal. App. 556, 189 Pac. 799, it was held that the fact that defendants were on the left-hand side of the road is not negligence as a matter of law; also that plaintiff suing for injuries must show not only that the accident occurred, and he was injured, but that it occurred by reason of the negligence of the defendant; and that where the negligence of the plaintiff, the driver of a motorcycle, was the proximate cause of the collision with the defendant's automobile, the plaintiff could not recover.

In *Needy v. Littlejohn,* 137 Iowa, 704, an instruction containing the following was approved:

"The law requires that a person proceeding along the public highway with any vehicle must turn to the right and give one-half of the road to vehicles which he meets. What is meant by one-half of the road is one-half of the traveled track; yet there was no obligation on the part of the defendant to give one-half the traveled track, provided the plaintiff's horse and buggy were outside of the traveled track and on the east side of the turnpike, as in such case the defendant had the right to run his automobile in the traveled track, provided there was room to pass, and the horse had shown no signs of fright." (p. 709.)

In the opinion referring to this instruction it was said:

"The instruction last quoted announces the true rule on the subject as we understand it." (p. 710; see, also, *Riepe v. Elting,* 89 Iowa, 82.)

In 18 A. & E. Enc. of L. 580, the rule is thus stated:

"The fact that one of the meeting vehicles is on the wrong side of the road does not, however, show negligence on the part of the driver thereof, as a matter of law. . . . Nor does it render him liable to the other unless the latter took ordinary care to avoid any accident. So one must not remain on the right side of the highway if by a slight change he can avoid the accident; nor is one justified in crossing to his proper side, if it is already occupied by another vehicle, merely in order to assert the 'rule of the road.'"

In *Westlund v. Iverson et al.,* 191 N. W. (Minn.) 253, it was held that traffic regulations as to vehicles do not require them to give warning to pedestrians walking on a path at the edge of the roadway.

In an article in *The Law Times,* vol. 118, p. 263, reviewing several English cases on the subject, it was pointed out that the object of the rule of the road is to avoid accidents, and that one is not justified

in asserting his right to use his side of the road when by not doing so he can avoid collision. That it is negligence for him to do so is stated in 29 C. J. 654, and was applied in *Wrinn v. Jones,* 111 Mass. 360, and *Neanow v. Uttech,* 46 Wis. 581.

The evidence in this case is conclusive that the defendant was traveling on the grass and gravel north of the traveled way, which was an asphalt pavement, unoccupied at that time by any other vehicle. The fact that defendant was in that position was not, in itself, negligence, nor did it justify the plaintiff in assuming that upon approaching him he would turn into the traveled way and to the right of the center thereof. If plaintiff had all the traveled way, ample in width, smooth and unobstructed by vehicles or otherwise, it was really no concern of his where the defendant was. Plaintiff had no right to assume that defendant would drive into the traveled way and to the other side thereof, especially when it was evident that he was not going to do so. The fact that there was a collision and resulting injury is not enough of itself to entitle plaintiff to recover. He must show some negligence of the defendant which caused the injury. (Huddy on Automobiles, 6th ed., p. 431.) But, the plaintiff had as much right to travel upon the gravel and grass to the north of the traveled way as the defendant had. Their rights in that respect were equal and the question of liability of either for injury resulting in a collision of the vehicles would depend on the ordinary rules of negligence.

The circumstances of the parties were analogous, at least, to a situation as follows: A and B are driving in a field, in which each has a right to drive, along the south side of an east-and-west fence, A traveling east in an automobile, B traveling west with a motorcycle, and each being so near the fence that the other could not safely pass between him and the fence. The lay of the ground to the south of them is level and smooth. As they approach each other, it is evident to both that one or the other must turn out of the road to avoid a collision. B on the motorcycle starts to turn to the south, A in the automobile just at the same time or directly after, starts to turn to the south, but upon observing B turning to the south, he immediately turns back to the north as upon his original course. There is a collision. The right front portion of the motorcycle coming in contact with the right hind fender of the automobile, and the question is, who is to blame?

Appellee cites the case of *Miller v. Jenness,* 84 Kan. 608, 114 Pac.

1052, as being like this case on the facts. The important difference in the two cases is that in the Miller case both parties were traveling in the traveled way, while in this case the defendant was traveling outside of the traveled way.

Considering all the circumstances, this court is of the opinion that the question should have gone to the jury as to whether or not the defendant was negligent.

Appellant contends that plaintiff was negligent as a matter of law in such a way as to preclude his recovery, notwithstanding any negligence on the part of the defendant, for the reason that he had a rider on in front of him, which necessarily partially obstructed his view and rendered it more difficult for him to control his motorcycle; and further, for the reason that plaintiff was not justified, when he saw that defendant was on the outside of the traveled way and had left the entire pavement to plaintiff, in riding directly toward the defendant and in not turning into the traveled way where he could have passed the defendant with safety. Some of these matters we have already discussed. The defendant offered evidence on the question of the effect of a rider in front on the motorcycle making the machine more difficult to handle and partially obstructing the view, so that was before the jury.

In *Kaylor v. Ozark Oil Co.*, 191 N. W. (Iowa) 71, where there was a collision between plaintiff's sleigh and defendant's truck, there was evidence that after plaintiff had driven his sleigh past the front wheels of the truck he "pulled in a little" and collided with the hind wheel of the truck, causing the injury complained of. There was other evidence as to how the collision occurred. The court held that the contributory negligence of the plaintiff was properly left to the jury.

The court is of the opinion that the question of whether or not the negligence of the plaintiff contributed to the injury was proper to submit to the jury.

Appellant contends that he was unduly restricted in his cross-examination of the plaintiff. When plaintiff was on the witness stand he was asked on cross-examination with regard to his habits of driving, as to whether or not he had been warned about the reckless manner in which he rode the motorcycle, and if he had not been arrested, and if he had not plead guilty and paid a fine for reckless driving with his motorcycle on the night before the day of the collision. These questions were objected to and the objection sustained.

The extent to which one may be allowed to go in the cross-examination of a party to a suit rests largely in the discretion of the trial court; but should not be restricted in matters which materially affect the credibility of the witness upon a material question, which is controverted in the case. In this case the question of care or lack of care of the plaintiff was one of the important matters to be considered by the jury for its bearing upon his testimony as to the negligence of defendant, and his own negligence, if any. The jury, of course, had to weigh his testimony. The question of his conduct in handling a motorcycle, and especially the question of whether or not he had been arrested and plead guilty and paid a fine for violation of statutes or ordinances pertaining to careless or improper methods of riding a motorcycle, were all proper matters for the jury to have in considering the weight of the testimony, and it was error to sustain the objection to these questions.

In *Cockrill v. Railway Co.*, 90 Kan. 650, 136 Pac. 322, it was held:

"When a party takes the stand as a witness his adversary has a right, on cross-examination, for the purpose of affecting his credibility, to inquire touching his past life and conduct, the limits of such inquiry being ordinarily within the discretion of the trial court." (Syl. ¶ 1.)

In the case cited the inquiry was permitted but its scope was limited and the court held it was not error. Here the inquiry was not permitted. To the same effect see *Yanelli v. Littlejohn*, 172 Mich. 91; *Wendling v. Bowden*, 252 Mo. 647; *Edwards v. Price*, 162 N. C. 243; *St. Louis & S. F. R. Co. v. Walker*, 31 Okla. 494.

In *Brown v. Howard*, 43 R. I. 571, 114 Atl. 11, it was held that under a statute providing that a person who has been convicted of any crime shall be admitted to testify like any other witness "except that such conviction or sentence for any crime or misdemeanor may be shown to affect his credibility" the crimes and misdemeanors which may be shown are not limited to infamous crimes, and a defendant in an action for damages for negligence in driving his automobile may be questioned as to convictions for violations of the statute regulating the speed of automobiles on public highways.

It will be noted that the Rhode Island statute in the case cited was similar to our section 317 of the civil code (Gen. Stat. 1915, § 7219). To the same effect is *Niedzinski v. Coryell*, 215 Mich. 498, 184 N. W. 676.

Appellant contends that his motion for new trial should have

been granted because of newly discovered evidence. At the hearing of the motion he offered the affidavit of J. C. Wolcott, setting out statements made to affiant by plaintiff as to how the collision occurred, the statement being entirely different from plaintiff's testimony at the trial and corroborating in some measure the testimony defendant gave at the trial. Shortly after making this affidavit, at the request of plaintiff, Wolcott made another affidavit which tended to modify in some ways the first affidavit. Later, and at the request of defendant, he made an affidavit explaining how he happened to make the second affidavit and again affirming his original affidavit as to what the plaintiff had told him. At the hearing of the motion for a new trial, the three affidavits of Wolcott were before the court, together with affidavits of plaintiff denying having made these statements to Wolcott and affidavits of plaintiff and his counsel concerning how the second Wolcott affidavit had been prepared. There appears to be no question that this evidence was newly discovered; that it was material no one would question. No witness had testified to any statement made by plaintiff as to how the collision occurred, hence it was not cumulative. The underlying basis of the ruling by the trial court upon the question of granting a new trial because of newly discovered evidence is whether or not, in view of all the facts and circumstances in the case and the nature of the newly discovered evidence, in the court's judgment it would be likely to produce a different result upon a retrial. In this case the court might have granted a new trial because of the newly discovered evidence, but in view of his knowledge of the case as a whole, and of his duty to refuse to grant a new trial, if in his judgment the newly discovered evidence under all the circumstances would not be likely to produce a different result, we cannot say that the court's ruling on the matter was error.

This action was brought by Calvin Zinn as father and next friend of William Zinn, who was injured. Upon the motion for new trial it was shown that Calvin Zinn, near the beginning of the term of court at which the case was tried, went to the bailiff or some other court official, and requested to be put upon the regular panel as a jury talesman, and that he had served upon the jury for a month or six weeks before the trial of this case. At the time of making up the jury list for this case the trial judge instructed his stenographer to look over the list and see that no jurors were called who

Bank v. McHenry.

had served on a jury with Calvin Zinn and that was done. Appellant makes the point that this is such misconduct of a party as would require the granting of a new trial. There was no showing that Calvin Zinn ever mentioned this case to any one of the jurors, nor even the fact that he had a case pending to be tried. In fact, his testimony was that he did not mention it to anyone. In a county as populous as Shawnee, it would seem there should be no excuse for this situation; that plenty of jurors could be drawn in the regular way for court service. While not commending the practice of a litigant seeking and procuring service upon a jury at a term of court at which he has an important case for trial, in the absence of any showing that the matter was ever referred to in any way between him and the other jurors, we regard it as being too remote to constitute misconduct sufficient to set aside the verdict. We are partially moved to this holding because, so far as the record shows, the defendant knew of this situation when the case was called for trial and took his chances on getting a qualified jury out of the panel notwithstanding that fact, instead of making application for continuance for that reason.

For the reasons hereinbefore stated the case will be reversed, with directions to grant a new trial.