## CHARLES M. MAGNUSON AND ANOTHER v. DAMON I. BOUCK AND OTHERS.[1]

June 25, 1926.

No. 25,057.

**Questions for jury.**
    1. Evidence as to fraud and the rescinding of a contract *held* to make a question for the jury.

**New trial granted for misconduct of a prevailing party.**
    2. Where one of the prevailing parties to an action, during the noon hour of the last day of the trial, takes one of the jurors in his automobile a distance of two miles to enable the juror to procure intoxicating liquor, a new trial should be granted.

> Appeal and Error, 4 C. J. p. 830; n. 45; p. 832 n. 48; p. 837 n. 89; p. 905 n. 41.
> New Trial, 29 Cyc. p. 797 n. 59; p. 803 n. 16, 17; p. 1009 n. 54.
> Vendor and Purchaser, 39 Cyc. p. 1976 n. 60.
>
> ---
>
> See note in L. R. A. 1915C, 302; 20 R. C. L. p. 252; 3 R. C. L. Supp. p. 1049.

Action in the district court for Benton county to recover amount due upon a contract for sale of land in Aitkin county. The case was tried before Roeser, J., and a jury which rendered a verdict in favor of defendants. Plaintiffs appealed from an order denying their motion for a new trial. Reversed.

*S. H. Eckman* and *Henry H. Sullivan*, for appellants.
*Donohue & Quigley*, for respondents.

QUINN, J.

Appeal from an order denying plaintiffs' motion for a new trial. The action was commenced in September, 1922, to recover $9,000 past due upon a contract for the sale of land in Aitkin county. The action was tried in October, 1923, and a verdict returned in favor

[1]Reported in 209 N. W. 896.

of defendants in the sum of $6,000. Judgment was entered September 22, 1924. In their answer respondents admitted the execution of the contract and the payment of $6,000 thereon as alleged in the complaint. They further set up fraud and deceit on the part of appellants and their agents in the sale of land, rescission, and ask for the recovery of the amount paid.

Two general propositions are involved in this appeal: (1) Are the proofs as to the charge of fraud and the rescinding of the contract such as to justify the trial court in submitting those issues to the jury? We answer the query in the affirmative. While the evidence is not conclusive either one way or the other upon such issues, it justifies the submission thereof to the jury.

(2) Was it reversible error to refuse a new trial for misconduct of a juror? The record discloses this situation, substantially: It was a long trial, and at the noon recess of the last day a juror, an elderly man, approached the defendant Bouck, just outside the courthouse, stating that he was suffering from stomach trouble, and asked Bouck to take him to Ronneby, a small village two miles distant from Foley, where he knew a friend from whom he could obtain some whiskey or moonshine. Bouck acceded, and in his automobile took the juror to Ronneby. Bouck did not get out of the car, but drove around a block or so while the juror entered a place and procured the desired moonshine. No one was with them. They were there alone together about 20 minutes. Of the above facts there is no dispute, except that Bouck denies the juror told him that his errand was to get whiskey; he contends that the juror said he wanted to get medicine.

Whether or not there has been such misconduct on the part of a juror or a jury as to require a new trial is generally left to the sound discretion of the trial court. His finding as a fact that, even though a party communicated with a juror, there was nothing said regarding the case being tried is accepted as true by an appellate court. Thoreson v. Quinn, 126 Minn. 48, 147 N. W. 716.

Brown v. D. S. S. & A. Ry. Co. 147 Minn. 167, 179 N. W. 1003, is cited by respondent, where we said that the trial court had "the

opportunity to observe the character of the jury and perhaps personally knew the mental makeup of individual members thereof. He is therefore in a much better position than this court to determine whether the misconduct referred to was likely to affect the verdict," and the rule was there applied that the matter must be largely left to the judgment of the trial court. State v. Briggs, 122 Minn. 493, 142 N. W. 823. It is however to be noted that in the Brown case the misconduct claimed was not participated in by the prevailing party. Nor was it a case where the alleged misconduct was of a nature to cast suspicion in the eyes of the public upon the integrity of the verdict. A casual communication between a juror and a party during the trial is ordinarily considered not such misconduct as to demand a new trial, when the trial court is satisfied that the communication did in no manner relate to the case.

Oswald v. M. & N. W. Ry. Co. 29 Minn. 5, 11 N. W. 112, holds that if the "court can clearly see" that a casual communication between a juror and the successful party was harmless a new trial will not be granted for the misconduct. The same casual communication occurred in Eich v. Taylor, 20 Minn. 330 (378). In the same category may be placed those cases where accidentally or through force of circumstances a juror and a litigant come in contact. Alabama P. Co. v. Hall, 212 Ala. 638, 103 South. 867; Martin v. Mitchell, 28 Ga. 382; Hilton v. Southwick, 17 Me. 303, 35 Am. Dec. 253.

In Schmidt v. Thompson, 140 Minn. 180, 167 N. W. 543, the trial court's ruling was sustained that a new trial was not required on account of the alleged misconduct of the attorney for the prevailing party having played cards with two of the jurors at the hotel where all were lodged during the term of court, but this is to be noted that there were others than the jurors and the attorney present—the playing was done in the open lobby of the hotel. Evertson v. McKay, 124 Minn. 260, 144 N. W. 950, is not in point for the showing was not such as to permit a finding that the communication between the juror and the litigant was prior to the verdict.

The respondents are right in the contention that the use as medicine or otherwise of ardent spirits by a juror is not necessarily misconduct. Robinson v. State, 33 Ark. 180, 185; Gorham v. Sioux

City S. Y. Co. 118 Iowa, 749, 92 N. W. 698; Nichols v. Nichols, 136 Mass. 256; Gilmanton v. Ham, 38 N. H. 108, are cited.

There is no claim that the juror got drunk or that he was not indisposed or that the liquor affected his ability to discharge his duties as a juror. But, that notwithstanding, we think the situation presented here is distinguishable from any case cited by respondents in this: The juror and prevailing party were alone together on a trip which, to say the least, from all the undisputed facts and circumstances thereof forces everyone who has the purity of the administration of justice at heart to the conclusion that Bouck and the juror placed themselves in such an improper and equivocal position that strong and well-grounded suspicion of misconduct was bound to arise, so that the verdict is tainted in public estimation, to say nothing about the estimation in which it must be held by the defeated party. It is unbelievable that a business man, such as Bouck was, should have thought it needful to take an ailing juror away from a considerable village where, no doubt, were both doctors and medicines, to a little village two miles distant where was neither doctor nor a more potent remedy than moonshine. It is insisted on behalf of defendants that the juror was not in fact influenced by any act of the defendant and that justice had been done between the parties. It may be so, but it may be useful to the party to learn that a good cause may be injured but cannot be promoted by conduct of this sort, and to the public generally to know that it will be tolerated in no court of this state. No act on the part of a litigant could create more distrust in juries. The trip was uncalled for, and no reasonable explanation consistent with an innocent purpose was made or could be made. So long as the jury system is a part of the administration of justice it is necessary that each juror's conduct be above suspicion, and especially should not one of the litigants be permitted to have a part in causing the suspicion. The courts should not only see to it that the parties have a fair trial, but that nothing occurs in the trial of cases that shakes public confidence in the integrity of the verdicts rendered.

We consider the undisputed facts here and the unavoidable inferences therefrom to be such that the verdict should not stand.

The words of Mr. Justice Hallam in State v. Snow, 130 Minn. 206, 153 N. W. 526, are appropriate: "If jurors are to dispense justice fairly, and if their verdicts are to retain the confidence and respect of litigants and the public generally, the purity of jury trials must be jealously guarded. We know of nothing more likely to breed distrust of the result of a jury trial than undue familiarity between jurors and persons interested in the outcome of the litigation." Here was not only familiarity and opportunity for secret communication, but a favor bestowed for a seemingly unlawful purpose by the prevailing party. Even giving the fullest effect to the learned trial court's conclusion that no influence was sought to be exerted by Bouck the 20 minutes he was alone with the juror on the trip, still it gave such opportunity for wrong conduct without any reasonable or at all adequate excuse for the juror and litigant placing themselves in such situation that, in the eyes of the public, faith in the integrity of the verdict is destroyed or impaired, and there should be a new trial.

Order reversed.