STATE, BY G. A. YOUNGQUIST, ATTORNEY GENERAL, v.
MARIA WHEELER AND OTHERS.
WALDO R. ADAMS, APPELLANT.[1]

March 21, 1930.

No. 27,750.

[1]Reported in 230 N. W. 91.

*Henry N. Benson,* Attorney General, and *Charles E. Phillips* and *Harry J. Acton,* Assistant Attorneys General, for the state.

*H. L. & J. W. Schmitt,* for respondent.

OLSEN, C.

The state of Minnesota condemned a strip of land 100 feet wide across the farm of Waldo R. Adams for right of way for trunk highway No. 5, and appeals from the judgment fixing the amount of damages. A motion for a new trial had been made and denied.

The Adams farm contains about 200 acres, is located about three miles from Mankato, and is used as a dairy, stock and grain farm. It consists of an approximately square tract of some 160 acres, with an additional 40-acre tract adjoining the northwest 40 of the larger tract on the west. The farm buildings are located near the center of this additional 40-acre tract. The highway runs diagonally across the 160-acre tract from a point a short distance west of the northeast corner thereof to a point on the westerly line thereof a little more than half way south of the north line. The ground taken for the highway amounts to 6.76 acres. By running the road through the farm, there are left approximately 84.5 acres, with the farm buildings thereon, north of the highway, and about 109.5 acres, without any buildings thereon, south of the highway. A public highway, a town road, runs along the north line of the farm.

The trial of the case commenced on April 2, 1929, at the then pending general February, 1929, term of the court. The next general court term would open on June 6, 1929.

The respondent, Waldo R. Adams, was a member of the regular panel of petit jurors for the February term of the court, the term at which his case was noticed for trial. He served as such throughout the term and served on a number of juries trying cases prior to April 2, 1929. The petit jury commenced serving on February 11, and respondent had been in attendance and associated and served with the other jurors for a period of seven weeks before his case was brought on for trial. On March 28, a few days before the case was reached for trial, the state, appellant here, made a motion for a continuance of the case until the June term, based on an affidavit

showing the facts stated and alleging that because of his service and association with his fellow jurors respondent had such intimate acquaintance and relations with them that a fair and impartial trial of the issues in the case could not be had before the jurors on the panel then in attendance. The motion was denied.

We have been cited to the cases of Zinn v. Updegraff, 113 Kan. 25, 213 P. 816, Crowder v. Williams, 116 Kan. 241, 226 P. 774, and Garrett v. Patton, 81 W. Va. 771, 95 S. E. 437, as throwing some light on the question whether the denial of such a motion was error. In the West Virginia case a state statute provided that no person should serve as a juror, except in felony cases, at any term of court at which he had any matter of fact to be tried by jury. The court in considering the statute said that one serving as a juror during a term of court is in many cases thrown into intimate relations with his fellows, and that such recent intimate relations might have undue influence upon the other jurors with whom he had served. It expressed the opinion that all the other jurors on the panel with whom the one in question had so served were incompetent to sit in the trial of his case. The court however held that defendant there had waived any error by failing to move for a continuance or to take advantage of the disqualification before the jury was sworn.

In Zinn v. Updegraff, 113 Kan. 25, 213 P. 816, the court criticizes the practice of permitting one who has an action to be tried at a term of court to serve as a juror at that term; but, in view of the fact that no application for a continuance had been made and that the court had taken pains to see that no juror who had served with the litigant on any case tried was placed on his jury and no showing that the matter was ever referred to between him and the other jurors, it was considered too remote to constitute misconduct. The matter is summed up in the later Kansas case of Crowder v. Williams, 116 Kan. 241, 226 P. 774, in the statement that some showing of prejudice other than conjecture would be required before reversible error could be predicated on such an incident.

We agree with the courts mentioned that one who has an important case for trial at a term of court should not be permitted to

serve upon the jury panel at that term, associate and serve with his fellow jurors for many weeks, and then have his case tried before them. If it could be supposed that a litigant, not a juror, should associate daily with the jurors on the panel for several weeks during a court term and be present and take part in their deliberations, such close association with the jurors, irrespective of any question of right or propriety, would be held to disqualify the jurors from hearing his case. It would also be such misconduct on the part of the litigant as to preclude him from having his case so tried. Here the respondent had the right to associate and serve with his fellow jurors on all other cases. He was clearly in the right in so doing. But when it came to the trial of his own case, it is difficult to see why his association with them might not result in the same situation as if he were not a member of the jury panel. The law intends and seeks to safeguard juries from contact with or influence by litigants and others, except what is brought out before them in open court in the trial of actions. Whether such contact and opportunity for influence is had by a litigant who is a member of the jury panel, or by a litigant who is not such member, can make little difference. It is the close contact and association with the jurors who are to sit on his case, and not his position as a member of the jury panel, that is objectionable. The public interest in preserving the integrity of and the high regard for the jury system of trial is a material factor to be considered.

In State v. Snow, 130 Minn. 206, 153 N. W. 526, and Magnuson v. Bouck, 168 Minn. 39, 209 N. W. 896, the importance of preserving the purity of jury trials and the respect of the litigants and the public for jury verdicts is pointed out. It is held that undue familiarity between jurors and a litigant is very likely to breed distrust of the result of jury trials; that a litigant should not be permitted to have a part in causing suspicion; that the purity of jury trials must be jealously guarded; and that the court should not only see to it that the parties have a fair trial but also that nothing occurs to shake public confidence in the integrity of the verdict rendered.

Cases involving rulings on challenges of jurors are not strictly in point but have some bearing. Jurors, in order to be qualified,

should be indifferent both as to the parties and the cause to be tried. 35 C. J. 327. Bias and prejudice may arise from such a variety of causes and depend so much upon the particular facts and circumstances that no definite rule can be laid down. 35 C. J. 328. A juror is incompetent if he admits such friendship for one of the parties or members of his family as, other things being equal, would influence his verdict. Musser v. Musser, 92 Neb. 387, 138 N. W. 599. Where it appears that the relations between a juror and one of the parties are so intimate as would reasonably be calculated to influence his verdict, the juror should be excused. Rooker v. Deering S. W. Ry. Co. 215 Mo. App. 481, 247 S. W. 1016; Rosenberg v. Rubin, 164 N. Y. S. 201; Commonwealth v. Mosier, 135 Pa. 221, 19 A. 943. Courts are vigilant to preserve the impartiality of the jury. International Agric. Corp. v. Willette, 120 Me. 423, 115 A. 170. The court and not the juror must be satisfied that a challenged juror is free from bias. State v. Caron, 118 La. 349, 42 So. 960. The court is governed by the facts shown and not by the opinion of the juror as to the effect thereof. Lingafelter v. Moore, 95 Ohio St. 384, 117 N. E. 16; Texas C. Ry. Co. v. Blanton, 36 Tex. Civ. App. 307, 81 S. W. 537.

The trial court in passing upon a motion for continuance or ruling upon the competency of jurors has great discretion. The only limitation is that the court must exercise a sound discretion upon the facts and circumstances shown to exist.

It is also the general rule that an order or ruling upon a motion for continuance or upon the competency of jurors will not be disturbed by this court unless the party complaining shows that he was prejudiced thereby.

The verdict here returned was for the amount of $15,250. The appellant contends that the verdict is greatly excessive; that it appears to have been given under the influence of passion and prejudice; and that it, together with certain incidents hereinafter referred to, establishes the fact that appellant was prejudiced by the denial of the motion for a continuance.

Examining the evidence, we find the usual conflict in the opinions of witnesses for each party as to the depreciation in the market

value of the farm. Such opinions are not conclusive but are for the consideration of the jury in connection with all physical and other facts and circumstances shown. The verdict does not coincide with the opinion of any witness. It comes closest to the opinion of respondent's witness Streater. He testified to a depreciation in market value of $12,000, and then added $2,500 for expense of additional fencing and for the value of land taken. Having given his opinion as to the market value of the whole farm before the road was established and its market value after the road was established, there would be nothing to add thereto. The necessity for additional fencing and the value of the land taken were elements to be taken into consideration in arriving at the depreciation in value of the farm as a whole but not to be added thereto. The measure of damages was the depreciation in the market value of the farm as a whole by the taking of the strip of land for road purposes and establishing the road thereon; or, if preferred, the damages might be measured by taking the reasonable market value of the 6.76 acres taken, as one item, and the depreciation in the value of the remaining acreage as the other item.

The court gave to the jury as a measure of damages "the difference between the reasonable market value of the land immediately before and the reasonable market value of the same land immediately after the taking of the right of way and the construction of the road improvement by the state," thus adopting the rule first stated. The jury added the further sum of $750 to Streater's estimate.

Other witnesses for the respondent had given much higher estimates as to damages. Some witnesses for respondent, in stating the basis for their opinions, treated the road as an insurmountable barrier which would entirely separate the land south of the road from the land north thereof on which the buildings are located and prevent the use of the land south of the road in connection with the other part and the buildings. So doing, they were able to estimate the damages to the 109.5 acres south of the road at some $135 per acre. We find no sufficient basis for considering the land south

of the road as disassociated from and no longer a part of the farm. The road will cause inconvenience in crossing to and using the land south of the road, and inconvenience in tilling the same. Such inconvenience is a proper element of damages in arriving at the depreciation in the market value of the entire farm but not on the basis that the land south of the road is no longer a part of the farm. One witness laid some stress on the claim that dust and gases from automobiles on the road would injure the crops on a wide strip of land on each side. The right of way is 100 feet wide and the road is to be paved. Without further information on the subject this claim would seem speculative. One witness stated: "I took into consideration the first thing that Babcock certainly raised Cain with the farm when he put that road through there, that is the first thing I took into consideration." Appellant is not in a position to and does not complain of the reception of the evidence referred to, and most of it came out on cross-examination by its counsel. We refer to it only for the purpose of showing the opportunity for and probability of an excessive verdict. The court, as noted, gave to the jury the correct measure of damages, but this evidence was all before the jury for consideration. What they did with it, except as reflected in their verdict, we do not know.

By affidavits, on motion for a new trial, appellant sought to show that in the court room, just after a recess in the trial and in the presence of a number of persons, including witnesses for the state who had not yet testified, a son of the respondent approached one of the state's witnesses who had just left the stand and in an angry manner made disparaging remarks about his testimony; that, on the evening of one of the days of the trial the wife of respondent telephoned to the wife of one of the witnesses for the state, whose testimony had not yet been taken, and asked the wife of the witness to use her influence with her husband to favor the respondent; that one of the jurors in the case, during intermissions in the trial, conversed about the facts in the case with one Troskey, a proprietor of a lunch room, that Troskey inquired about the case a number of times and told the juror to "soak it" to the highway department and

offered to bet that the verdict would be $15,000 or more. That there were conversations between the parties referred to on these three occasions is admitted, but Troskey and the two members of respondent's family referred to deny the making of any objectionable statements, and respondent denies that he had anything to do with these conversations or knew anything about what was said therein at the time. The showing so made, in view of conflicting affidavits, is not sufficient to justify a reversal on the ground of misconduct. The most that can be said is that such incidents, together with the fact that respondent, knowing he had an important case for trial at the court term, did not ask to be excused from service but continued to associate and serve with the jurors on the panel, tend to indicate an undue zeal and effort by him, his family, and others, to obtain a favorable verdict. Had respondent at the opening of the term asked to be excused from jury service, no doubt the court would readily have granted his request.

■ At the time the motion for continuance was made, there having then been no trial, appellant was not in a position to show any actual prejudice. But the court had the situation before it and the likelihood of prejudice should have been apparent. A litigant is entitled to a prompt trial of his cause. That right however must yield to the superior right of every litigant to have a fair trial before an impartial jury. The continuance asked was for a period of about two months. There was no showing in opposition thereto of any loss or prejudice likely to result to respondent. If any additional expense would be incurred the court could impose proper terms. Again, if for any known reason a continuance was not advisable, the court, under G. S. 1923 (2 Mason, 1927) § 9468, could have called in other jurors to try the case. In an important case involving a substantial amount, the additional expense to the county was not a serious obstacle. We hold that upon the record presented a sufficient showing of prejudice has been made and that it was error not to continue the case or to call in other jurors for the trial.

■ Counsel for appellant may have been at fault in not calling the situation to the attention of the court at the opening of the

term. Ordinarily the attorneys have court calendars and jury lists at that time. Counsel might also well have asked in his motion for the alternative relief of having other jurors called to sit in the case. However, in view of the interest of the courts, litigants, and the public, in the preservation of the purity and integrity of our jury system, we do not find that there has been any waiver.

Judgment reversed and a new trial granted.

HOLT, J. (dissenting).

I concur in the part of the opinion which stresses the importance of the duty of a trial court to assure litigants an impartial jury. But a litigant should not burden the court with the whole responsibility. That a juror is acquainted with a party to the suit is not a ground for a challenge. It would therefore seem unimportant whether the acquaintance began in jury service or in any other manner. However it appears to me that appellant's motion for continuance came too late and without any adequate excuse. As stated in the opinion, the court calendar available to all attorneys having cases noticed for trial in the rural district courts contains a list of the petit jurors for the term. No showing was made that the attorneys for the state did not know from the first day of the term that respondent was a petit juror for that term. I assume that a mere suggestion to the court of this fact at or near the beginning of the term would have excluded respondent from serving.

Moreover, in my opinion, the court is not justified in concluding that the verdict was so large as to indicate that prejudice resulted from a denial of the motion to continue the case. There was evidence from practical farmers and men of affairs of apparently high standing, justifying a verdict of several thousand dollars in excess of the verdict rendered. These witnesses were acquainted with the farm and had examined it with a view to determine its value with and without the highway, and so had the jury. Most of the members of this court have neither seen the farm nor have had recent experiences as to market value of farms or the depreciation or loss resulting to a farm from having a trunk highway cut diagonally across a quarter section of its cultivated part. We held the dam-

ages not excessive in State ex rel. Hilton v. Lambert, 171 Minn. 369, 214 N. W. 653. A comparison of the two cases is convincing to me that this is a more moderate verdict.