## Stanley et al. v. Brown.

December 6, 1946.

482

Stephens & Steely and W. B. Early for appellants.

C. B. Upton, Joe S. Feather and R. L. Brown for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

J. H. Brown recovered judgment for $500 against
W. M. Stanley and his wife under a contract to pay him
that sum for assisting in the sale of real estate and a
stock of merchandise in Corbin, and the Stanleys appeal.

The defendants moved for a continuance on the
ground that the plaintiff had been serving on the jury
panel regularly and continuously since the beginning of
the term, ten days before, and they did not believe they
could obtain a fair and impartial trial by reason of the
plaintiffs' connection and association with the jurors
who would try the case. The motion was overruled, but
the court on a voir dire asked the panel whether the fact
of Brown's association and service would embarrass, in-
fluence or prejudice them, and the record shows ''no
juror stated'' that it would. We suppose nobody was
surprised.

Our statutory system for obtaining and selecting
jurors aims at fairness and impartiality. It establishes
standards of eligibility and modes of selection, but ob-
viously it is not possible for the legislature to enumerate
standards that will embrace all causes of disqualifica-
tion. So that the constitutional guaranty of an impar-
tial trial will not be destroyed by the omission, the sys-
tem extends the right of challenge for incompetency for

any cause other than those enumerated. And finally, the right is given each party to peremptorily challenge for no cause at all three out of eighteen who may be found qualified after thorough examination. KRS 29.030 et seq. The great trend of modern decisions is to exclude from juries all persons who by reason of their business or social positions in relation to a party litigant could be suspected of possible bias. 31 Am. Jur., Jury, Sec. 166. The field is very broad and the relationships which have been held to afford that result are too numerous to be catalogued. The particular objection raised here appears not to have been passed upon by this court.

In Garrett v. Patton, 81 W. Va. 771, 95 S. E. 437, in considering a statute which provided that no person should serve as a juror, except in felony cases, at any term of court at which he had any matter of fact to be tried by the jury, the court expressed the view that a juror is thrown into such intimate relation with his fellows that it might have an undue influence upon the others with whom he has served in the trial of a case, so that the entire panel should be deemed disqualified. In Zinn v. Updegraff, 113 Kan. 25, 213 P. 816, the court criticized the practice of permitting one who has an action to be tried at a term of court to serve as a juror at that term, but since there had been no application for continuance and the court had taken pains to see that no juror who had served with the litigant on any case tried was placed on his jury, the fact of service on the panel was deemed non-prejudicial. In Crowder v. Williams, 116 Kan. 241, 226 P. 774, a motion for a continuance on the same ground had been overruled. The court observed that the fact of the relationship did not necessarily turn the jurors aside from their duty, and held that some showing of prejudice other than conjecture would be required before it would be considered a reversible error. The action of the trial court was held not to be an abuse of discretion. In State by Youngquist v. Wheeler, 179 Minn. 557, 230 N. W. 91, 92, a proceeding to condemn land for highway, the respondent had been a member of the jury panel. The motion of the State for a continuance on that ground was denied. Referring to the cases we have cited above, the court said:

"We agree with the courts mentioned that one who has an important case for trial at a term of court should

not be permitted to serve upon the jury panel at that term, associate and serve with his fellow jurors for many weeks, and then have his case tried before them. If it could be supposed that a litigant, not a juror, should associate daily with the jurors on the panel for several weeks during a court term and be present and take part in their deliberations, such close association with the jurors, irrespective of any question of right or propriety, would be held to disqualify the jurors from hearing his case. It would also be such misconduct on the part of the litigant as to preclude him from having his case so tried. Here the respondent had the right to associate and serve with his fellow jurors on all other cases. He was clearly in the right in so doing. But, when it came to the trial of his own case, it is difficult to see why his association with them might not result in the same situation as if he were not a member of the jury panel. The law intends and seeks to safeguard juries from contact with, or influence by, litigants and others, except what is brought out before them in open court in the trial of actions. Whether such contact and opportunity for influence is had by a litigant who is a member of the jury panel or by a litigant who is not such member, can make little difference. It is the close contact and association with the jurors who are to sit on his case, and not his position as a member of the jury panel, that is objectionable. The public interest in preserving the integrity of, and the high regard for, the jury system of trial is a material factor to be considered.''

The court took notice of the fact that at the time the motion for a continuance was made the appellant was not in a position to show any actual prejudice. It held, however, that the trial court should have sustained the motion for a new trial upon that ground because there was a sufficient showing of prejudice.

The trial court has a second opportunity to rule on the matter where the objection to proceeding with the trial is presented as a ground for a new trial. As we said in Johnston v. Commonwealth, 276 Ky. 615, 124 S. W. 2d 1035, 1038:

''A request for a continuance of a trial is but a means to an end. The end is a fair trial. The rules by which such motion is to be measured are but secondary

means. If their application, though apparently proper at the time, seems to have been unjust, or to have had disastrous result, the error ought to be corrected on the motion for the new trial. What should more profoundly concern the courts on review is whether the right end was achieved—whether there is justice in the verdict."

The impartiality and freedom of juries must be jealously guarded. The respect and confidence of the litigants and the public for jury trials and in the integrity of verdicts are essential. Anything that breeds distrust or affords reason for suspicion should be avoided.

We are of opinion there was error in this particular but that it was not prejudicial, for it seems to us that the evidence very fully supports the verdict for the plaintiff.

The petition sought recovery upon what is essentially a plea that the plaintiff's service was the sole effectual cause of the sale. At the close of his evidence the court permitted the filing of an amended petition to the effect that plaintiff's contract was only to aid and assist in making the sale and that he had done so. We see no error. The amendment perhaps was not necessary but it clearly comes within the rule which permits the amendment of a pleading at any time in furtherance of justice. Civil Code of Practice, Sec. 134.

The defendant, W. M. Stanley, owned a store building, filling station and residence, and he and his wife jointly owned a stock of merchandise. In the early part of 1945 they had contracted with Ona Hamlin to sell him this property. Mrs. Stanley refused to execute a deed, and they forfeited $500 for the failure of consummation. Negotiations for another sale were again begun in the fall. The plaintiff, Brown, is an influential citizen of Whitley County. He testified that Stanley inquired about his acquaintance with Hamlin and when advised that they were good friends, Stanley specifically promised to pay him $500 for his trouble if he would assist in making a sale to Hamlin. Brown related several conversations with him in which he recommended the purchase of the property and detailed his actions as a mediator between the parties. Brown had told Hamlin that he had been so employed. He testified that he had induced Hamlin to raise his offers and likewise induced the Stanleys to lower theirs. The negotiations extend-

ed over a period of about two months. When Brown entered the negotiations Hamlin had been willing to pay only $40,000 for the real estate. He ultimately paid $57,-500 for all the property. Hamlin testified that his last raise of $2500 was on Brown's advice. However, he testified, he had made up his own mind as to the purchase notwithstanding Brown's recommendation to buy and his father's recommendation not to do so.

Stanley admits five conversations with Brown, but he radically differs with him as to what was said. He had also talked with Hamlin direct and the trade was finally made by the two of them. The price was not then disclosed to Brown, and it seems he did not learn it until after this suit was filed.

Stanley testified that in the negotiations with Hamlin the latter had indicated he might give him his price if he could borrow the money, or some of it, at 3% interest. That he, Stanley, talked with Brown, whose son was a banker at Williamsburg, about getting Hamlin the money at that rate, and had promised to pay Brown $500 if he succeeded in getting it for Hamlin. Brown contradicts such a claim, and Hamlin testified that while he made such a statement to Stanley it was mere trading talk, for he had the cash and would not have to borrow any money at all. The circumstances as well as Hamlin contradict Stanley. After the trade had been made Brown went to see Stanley, but his wife insisted that he was too sick to have visitors. Finally, she told him that he had nothing coming to him and they would not pay him anything.

The appellants rely upon the cases holding that a broker must have been the efficient and procuring cause of a sale in order to recover commissions. They complain because the court refused to give an instruction to that effect offered by them. That law is not in point here. This suit is predicated on an express contract of employment to aid and assist the owners in effecting a sale to be made and which was made by them. See Stoner v. Nall, 149 Ky. 124, 148 S. W. 8. There being substantial evidence to support the cause pleaded, the court properly submitted the case to the jury.

The same is true as to the claim asserted against Mrs. Stanley for liability as a joint owner of the stock

of merchandise, for the evidence shows a knowledge and ratification of the actions of her husband as her agent in the negotiations.

The judgment is affirmed.