**Sewell B. CLEMONS, dba Clemons Cab Company, and Sewell B. Clemons, Individually, Appellant,**

**v.**

**Bob HARVEY, Appellee.**

Court of Appeals of Kentucky.

Dec. 11, 1964.

O. J. Cockrell, Jackson, for appellant.

James S. Hogg, Jackson, for appellee.

WILLIAMS, Judge.

This is an appeal from a judgment awarding damages to appellee Bob Harvey for injuries received when he was struck by a taxicab driven by appellant Sewell Clemons.

The accident occurred about a mile south of Jackson, Kentucky, on Kentucky Highway No. 15. At that point the highway runs north and south, and has a blacktop surface 18 feet wide with four-foot gravel shoulders. The accident occurred about noon on a clear, dry day. The posted speed limit in that location is 35 miles per hour.

The appellee's version of what happened is as follows: He and his wife had driven from Jackson to a parking area on his left side of the road across from Grigsby's Mill. He got out of his car and, before entering the highway, looked both ways for approaching traffic. To his left (south), one vehicle was approaching at a moderate speed. To his right (north), there was no traffic in sight for a distance of 375 feet, at which point visibility was terminated by a rise in the highway.

He started across the highway in front of the car approaching from the south and had reached the center line when, out of the corner of his eye, he observed appellant's taxicab coming from the north some 30 to 50 feet away at a speed of 50 to 60 miles per hour. In two leaps he cleared the hard surface of the highway and came to a stop about 18 inches beyond. The taxicab veered right onto the shoulder of the road where it struck him.

Appellant's version is that when he came over the rise 375 feet from where the accident occurred he saw the appellee standing in the opposite lane of traffic, looking in the other direction. Before reaching the center line the appellee hesitated as if to turn back. After hesitating momentarily, appellee suddenly leaped into the taxicab's lane of traffic, and, while in that lane of traffic, was struck by the taxicab.

Appellant said there was a steep embankment to the right of the road and a truck was parked on or near the shoulder preventing the taxicab from swerving to the right to miss the appellee. The left lane was occupied by the car coming from the south, which prevented the taxicab from swerving in that direction. The speed of the taxicab was approximately 30 to 35 miles per hour. Appellant applied his brakes immediately after realizing appellee was attempting to cross the road in front of him. At that time he was approximately 30 feet away. He did not sound his horn because there was not sufficient time.

On voir dire examination all of the jurors stated they did not know the appellee. However, at the noon recess one of the ladies on the jury went to the appellee, patted him on the hand, and had some conversation with him. Following the recess, appellant moved the court to set aside the swearing of the jury and continue the case. Hearing on the motion was had in chambers.

It developed at the hearing that the lady juror had not recognized the appellee at first, but later realized who he was. It seems appellee's mother had rented a house from her, and her son-in-law was related to the appellee. The juror stated she realized she should not have spoken to the appellee but was not thinking at that time.

■ We know it is only human to be somewhat biased in favor of one's own relatives, and the same feeling might pertain to relatives of close acquaintances. Although the relationship here is not close enough to be inherently prejudicial, when coupled with the juror's outward show of affection, it is enough to warrant a conclusion both by parties litigant and the court that a fair trial cannot be had.

In Stanley v. Brown, 303 Ky. 481, 198 S. W.2d 35, we said:

"The impartiality and freedom of juries must be jealously guarded. The respect and confidence of the litigants and the public for jury trials and in the integrity of verdicts are essential. Anything that breeds distrust or affords reason for suspicion should be avoided."

The trial judge had considerable discretion in this matter. However, taking everything into consideration, we are of the opinion that he should have set aside the swearing of the jury and continued the case. It was prejudicial error not to do so. Consequently, the case must be reversed.

■ On a new trial the question of negligence of each of the parties should be submitted to the jury.

The appellant argues that the appellee was guilty of negligence as a matter of law, but the appellee's story is that the road was clear to the north when he began his journey across it and that he actually cleared the road before he was struck by the taxicab. It is only where but one reasonable conclusion of negligence or non-negligence can be drawn by fair-minded men that the court may decide the issue as a matter of law. Middleton v. Partin, Ky., 347 S.W.2d 75.

We turn now to the last clear chance instruction. The appellant said the appellee was in the appellant's left lane when he first saw him. At that time he was 375 feet away and traveling at a speed of 35 miles per hour. The appellee first saw the taxicab after he had reached the middle of the road. In either location the appellee was in a position of peril either from southbound traffic or northbound traffic. In Riley v. Hornbuckle, Ky., 366 S.W.2d 304, we held the last clear chance doctrine applicable to the situation where a pedestrian remained in view of a driver in the intended path of travel of the vehicle long enough for the vehicle to move a distance of several hundred feet. There is no discernible difference in the duty placed upon a driver when he discovers a pedestrian already in his lane of travel as opposed to his duty when he discovers the pedestrian about to leap into his lane of travel or get hit by traffic coming from the other direction. In either case it is a question of whether the driver was far enough away to have avoided the accident. In the Riley case we said:

"\* \* \* there is usually a point in time at which the curtain closes on the ability of the pedestrian to get out of the way of a faster-moving vehicle while it yet remains open for the driver to shift his course. Whether that interim constitutes a 'clear' chance ought to be left to the jury."

The instructions on contributory negligence and last clear chance were properly given at this trial. In the event the evidence is the same on a new trial they should be given.

The judgment is reversed, with directions that appellant be granted a new trial.