HOWARD R. LOWE and JOHN R. LYNN, Plaintiffs and
Respondents, v. FLANK OIL CO., a Corporation, Deffend-
ant and Appellant.

No. 10636.

Submitted September 15, 1964. Decided January 8, 1965.

398 P.2d 604.

Hall, Alexander & Kuenning, Great Falls, John C. Hall (argued), Great Falls, for appellant.

Lamey, Crowley, Kilbourne, Haughey & Hanson, Anderson, Symmes, Forbes, Peete & Brown, Billings, Frisbee & Moore, Cut Bank, M. J. Thomas, Jr., Billings, John P. Moore (argued), Cut Bank, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the thirteenth judicial district of the State of Montana, in and for the County of Yellowstone, the Honorable Ernest E. Fenton, district judge, sitting without a jury.

On August 19, 1958, the defendant and appellant, Flank Oil Company, a corporation (hereinafter called defendant), entered into an agreement with plaintiffs, Howard R. Lowe and John R. Lynn, a partnership, operating as consulting geologists and engineers. The agreement entitled ''CONSULTING AGREEMENT'' consisted of the following terms which are of interest to this appeal:

1. The *life of* the contract was six years, commencing March 1, 1958, and ending February 29, 1964.

2. Under the contract the plaintiffs agreed to be *available* for consultations with defendant for its operations. In addition, defendant agreed to pay plaintiffs an annual retainer of at least $10,000 per year in equal monthly installments.

3. Plaintiffs were (a) allowed to employ third persons, firms

or corporations to assist them, provided that the salaries of these such third persons should be paid by plaintiffs out of their retainer; (b) plaintiffs would be paid by defendant for all authorized travel, meals, lodging and entertainment expenses incurred in performing these services; and (c) the contract could be terminated in the event of the dissolution, bankruptcy or the receivership of defendant.

In 1958, at the time the Consulting Agreement was signed by the parties to this appeal, the plaintiffs had their offices on the seventh floor of the Midland Bank Building in Billings, Montana. Sometime in 1959, the two men separated, Mr. Lowe having his offices on the sixth floor of the Midland Bank Building and Mr. Lynn, his offices on the eighth floor of the Midland Bank Building. The various people with whom they did business were informed that the office arrangement of the partnership had been changed. The defendant took this to mean a dissolution of the partnership, and after paying the partnership $10,833.33 ceased making payments with the last payment March 31, 1959, alleging that the partnership had been dissolved and that no further payments were due to plaintiffs.

The present suit was commenced on October 28, 1960. It was alleged at that time the defendant had become obligated to pay the plaintiffs the sum of $25,833.33. At the time of the pre-trial hearing, the demand in the complaint was amended and the recovery was set at $49,166.69, for all sums due and owing under the entire agreement for its full term by reason of the previous breach of the defendant as to all payments accrued and overdue and by reason of the anticipatory breach of the defendant as to payments coming due thereafter.

The defendant's position after pre-trial was that it admitted the execution of the Consulting Agreement with the plaintiffs, denied owing anything to the plaintiffs, and set up affirmatively that a third party, Christie, Mitchell and Mitchell, a co-partnership was the owner of said contract and entitled to all monies

due thereunder, but that the contract sued upon called for the payment to Lowe and Lynn, of one-half of all fees they had collected, therefore they should have been made a party to the suit; that the partnership was dissolved, therefore the contract was terminated.

The issues of fact at law set forth in the pre-trial order were:

1. The amount that the defendant had paid to the plaintiffs under the terms of the agreement,

2. Whether Christie, Mitchell and Mitchell were necessary parties to the action,

3. Whether the co-partnership referred to in the complaint had been dissolved,

4. Whether dissolution of the co-partnership excuses defendant from the performance of the agreement,

5. Whether plaintiffs had performed all of the terms and conditions of the said contract on their part to be performed so that they were entitled to maintain the action on the contract.

During the course of the trial the plaintiffs introduced two exhibits, each entitled "Consulting Agreement." The first was the agreement upon which plaintiffs brought suit against Defendant. The second, a "Consulting Agreement" between Christie, Mitchell and Mitchell and the plaintiffs. The latter agreement was dated December 22, 1958, wherein plaintiffs on or about March 1, 1958, agreed to make themselves available as consultants and advisors, and wherein, Christie, Mitchell and Mitchell agreed that on or about March 1, 1958, under an oral agreement, they would make themselves available as consultants and advisors to plaintiffs on matters pertaining to Lowe and Lynn's agreement with Flank Oil Co. This agreement was to run for six years, with plaintiffs agreeing to pay Christie, Mitchell and Mitchell an annual retainer of one-half of the amount received by them (Lowe and Lynn) as their annual retainer pursuant to an agreement between Lowe and Lynn and Flank Oil Company dated August 19, 1958.

In the course of the trial, Howard R. Lowe, inter alia, testi-

fied that while Lynn had offices on another floor of the building that he maintained the files for the partnership in his office; that after March of 1959, the date of the last payment by defendant that they had done business together as a partnership; that they were obligated to remain as partners under the terms of the agreement; that at the time of the trial if any monies were paid for their work, it would be paid to Lowe and Lynn into the partnership account maintained in the Security Bank; that the partnership had last filed a partnership tax return in 1961, that at the time of the trial there was a bank account for the partnership in the Security Bank; that the partnership own some leases and minerals; that at the time of the trial they could be hired to do work as a partnership; and that all the persons requesting their services would have to do would be to say ''We would like Lowe and Lynn to handle the job for us.'' This testimony was confirmed by Mr. Lynn when he took the stand and was examined and cross-examined.

E. M. Stringer, Vice-President of the Flank Oil Company stated on direct and cross-examination that he was the Vice-President of the company; that he had ordered a cessation of payments to them, as Vice-President of the Company, and that he had refused to pay money out for more services. He also stated that they had paid plaintiffs for a year under the contract and that they did not perform, but during cross-examination he carefully avoided answering any questions as to services that Lowe and Lynn had refused to perform under the agreement, answering to the question ''Well, what service did you demand of them that they didn't perform? A. The contract speaks for itself.

''Q. Well, can you tell me any single instance when you requested them to do something and they didn't do it? A. They didn't do anything.''

Under these facts the court found:

(1)  that plaintiffs had duly performed all the terms and

conditions of the agreement on their part, that the defendant had paid the plaintiffs pursuant to the terms of that agreement some $10,833.31;

(2) that plaintiffs were ready, willing and able to perform all the terms of the agreement, but the defendant refused to pay a balance due to plaintiffs under the terms of the agreement.

The court also found that Christie, Mitchell and Mitchell were not necessary parties plaintiff to the action; and that there was now due and owing $49,166.69. Judgment was for $49,-166.69 plus 6 percent interest from the date of the judgment until paid.

To the court's findings the defendant appellant filed a number of specifications of error which can be summarized under four general headings:

1. The court erred in ruling that the co-partnership of Christie, Mitchell and Mitchell was not a necessary party to the action;

2. The court erred in ruling that plaintiffs had performed the conditions of the agreement on their part to be performed;

3. The court did not make findings as to whether the co-partnership between the plaintiffs had or had not been dissolved. If the findings, by implication, are that the partnership was not dissolved, the court erred in its ruling; and

4. The court erred in any event in awarding a judgment to plaintiffs for amounts which were not, on the face of the agreement, due until times subsequent to the date of trial, and of the date of judgment, and which would become due only if, after date of trial and said judgment, plaintiffs continued to perform the terms of their agreement.

Concerning the defendant's allegations that the court erred in not making Christie, Mitchell and Mitchell a necessary party to the suit, it would appear from their cases and argument they are treating the agreement between Lowe and Lynn and Christie, Mitchell and Mitchell as an assignment, thereby making Christie, Mitchell and Mitchell an indispensable party.

496

The record is bare of any such facts and is without merit or support of any legal argument. Where there was no showing of any transfer of an interest in the actual contract, the contract or agreement speaks for itself. All that Christie, Mitchell and Mitchell ever had under this agreement was a right to fifty percent of all of the earnings once it had been paid by the defendant to the plaintiffs.

■ The agreement between plaintiffs, Lowe and Lynn, and Christie, Mitchell and Mitchell, as has been previously pointed out, had been entered into subsequent to the agreement between plaintiffs and the defendant. According to the theory and testimony of the plaintiffs produced in the case, Christie, Mitchell and Mitchell came in only because under their agreement with defendant, which allowed plaintiffs to employ third persons or corporations to assist plaintiffs in performing their obligations under the agreement. Concerning such an agreement it has been held that a person need not be joined as a plaintiff if he has no interest in the cause of action sued on, or if his interest attaches only on a recovery. See 67 C.J.S. Parties § 26; McDonald v. Chicago, etc., R. Co., 26 Iowa 124, 95 Am.Dec. 114; Eckert v. Lennert, 2 Misc. 198, 21 N.Y.S. 258.

Carefully analyzing the cases cited by defendant in this matter, we find none of them supporting the position that Christie, Mitchell and Mitchell are indispensable parties.

■ The second contention of defendant, that the court erred in ruling that plaintiffs had performed the conditions of the agreement, there is ample support in the testimony of plaintiffs and defendants to support the court's findings, based on paragraph three of the Consulting Agreement that Lowe and Lynn agreed ''to be available for consultations in order to promote a more efficient operation and development of the aforesaid refineries and oil and gasoline service stations, to secure new marketing area for the products of said refineries and to assist Flank in the acquisition of sup-

plies and crude oil necessary to maintain the efficient operation of said refineries.''

The court found that under the clause of the Consulting Agreement, to the effect that Lowe and Lynn *would be available for consultations,* there was no showing that at any time plaintiffs refused to consult with or perform their part of this agreement.

A careful look at the entire record reveals that in addition to the evidence produced, the answer of the defendant admitted the partnership; the court's pre-trial order on issues of fact at law recognized the existence of the partnership by asking whether it had ever been dissolved; the court's findings of fact and conclusions of law found the existence thereof by finding that the plaintiffs duly performed all the terms and conditions of the contract, and in addition, the findings by the court embraced all the issues raised by the pleadings therein.

The third contention raised by the defendant is a repetition of question 2, and is without merit, for there is no showing of non-availability of Lowe and Lynn at any time during the six-year period in question.

As to defendant's fourth contention which is that the court erred in any event in awarding a judgment to the plaintiffs on an agreement under which the terms had not yet expired; we agree that the case must be returned to the district court for further consideration.

Here the facts and pleadings in the case show complete repudiation on the part of the defendant of any obligations under the contract in the testimony of E. M. Stringer, Vice-President of the defendant, Flank Oil Company, and prefaced with the testimony of Lowe and Lynn there can be no question that on March 31, 1959, when the contract still had five years to run, that Flank Oil Company ended the payments under this agreement, and that no further payments were made. The pleadings of the defendant also show repudiation and a re-

nouncement by them of the contract existing between the partners.

The terms of the contract were that Lowe and Lynn would be available as consultants for a period of six years commencing March 1, 1958, and ending February 29, 1964. The contract was breached by the defendant, Flank Oil Company, March 31, 1959. This suit was commenced October 28, 1960, and judgment was had on January 2, 1963. Notice of appeal was filed on July 1, 1963, and the matter heard by this court September 15, 1964.

Only two cases were cited by respondent in support of the court's award of the entire contract plus interest under the theory of an "anticipatory breach of the contact," McCaull-Dinsmore Co. v. Jackson, 57 Mont. 555, 189 P. 771, and McFarland v. Welch, 48 Mont. 196, 136 P. 394. While neither of these cases are in point in this case, only the McFarland case is applicable and then only as it relates to the "amount of damages." Under the theory of the McFarland case the measure of the damages is the difference between the full amount due and the expense, if any, of earning it. Therefore, the court was in error in awarding at the time of the judgment, January 2, 1963, the full amount of the contract which then had another year and two months to run in addition to the interest on said full amount. We hold that interest should not have been allowed except on the respective amounts as they accrued and remained unpaid at the time of judgment.

Realizing that at this date the contract has run its full six years but not having in the record sufficient facts concerning the period covering the time from the judgment to the end of the contract, facts by which we could modify the judgment, we remand the cause to the district court to be modified so that accurate computation can be made and a proper judgment entered. Costs to be borne by the appellant herein.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, DOYLE and ADAIR concur.