HOWARD R. LOWE and JOHN R. LYNN, Plaintiffs and Respondents *v.* FLANK OIL CO., a Corporation, Defendant and Appellant.

No. 10649

Submitted September 15, 1964. Decided January 8, 1965.

398 P.2d 608.

Hall, Alexander & Kuenning, Great Falls, John C. Hall (argued, Great Falls, for appellants.

Lamey, Crowley, Kilbourne, Haughey & Hanson, Anderson, Symmes, Forbes, Peete & Brown, Billings, Frisbee & Moore, Cut Bank, M. J. Thomas, Jr., (argued), Billings, John P. Moore (argued), Cut Bank, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment in favor of the plaintiffs in the amount of $64,432.02. The judgment further ordered that the defendant continue to pay the overriding royalty to the plaintiffs until such time as foreclosure proceedings are instituted against the defendant on certain mortgaged properties.

The case was tried without a jury in the County of Yellowstone before the Honorable E. E. Fenton. The court made findings of fact and conclusions of law identical with plaintiffs' proposed findings and conclusions. The defendant filed exceptions. This appeal seeks a reversal of the lower court's judgment.

At this point it might be well to note Lowe and Lynn v. Flank Oil Co., 144 Mont. 490, 398 P.2d 604, which covers other related transactions between these parties.

The controversy arises out of an assignment of a 2 percent overriding oil royalty. The appeal presents two issues: (1) whether the money admittedly owed to plaintiffs under the assignment is *due while the defendant is in default on certain prior indentures;* and, (2) whether the firm of Christie, Mitchell and Mitchell, which is the assignee of one-half of the plaintiffs' interest, is a necessary party plaintiff.

Prior to the overriding royalty assignment, the defendant made two indentures: a first mortgage dated May 19, 1958, to the Royal Bank of Canada Trust Company, and a second

mortgage dated May 22, 1958, to E. M. Stringer and Max P. Zall. The purpose of the indentures was to obtain money to finance and arrange for the payment of the purchase price of certain properties purchased by the defendant. The properties are located in Colorado and Wyoming. The effective date of the purchase was March 1, 1958.

The first mortgage, which was dated May 19, 1958, had the following pertinent provisions:

"Section 3.01. * * * Mortgagor hereby grants, bargains, sells, transfers, assigns and conveys unto the Trustees, their successor or successors, all of the oil, gas, casinghead gas and other hydrocarbon substances produced and to be produced from the mortgaged property from and after the date of this Indenture at seven o'clock a.m., and the proceeds therefrom; provided, however, that unless and until the Trustees shall request payment direct to them thereof at any time or times *or an event of default* shall occur, as hereinafter defined, Mortgagor shall be entitled to collect and receive all proceeds of production, revenues and incomes from the mortgaged property. Upon the making of such request by the Trustees for payment direct to them *or upon the occurrence of an event of default,* as defined in Article X hereof, then the Trustees, *without notice to or demand on Mortgagor,* shall be entitled to have all such oil, gas, casinghead gas and other hydrocarbon substances and the proceeds from the sale and marketing thereof from said mortgaged property paid direct to Trustees * * *.

"Section 3.03. Mortgagor agrees that, upon request by the Trustees for payment direct to them of the proceeds of production *or upon the occurrence of an event of default hereunder,* it will not claim ot attempt to claim and will not collect or attempt to collect any such production or proceeds of production and that it will not in any way interfere with or embarrass the Trustees from demanding and collecting such production and the proceeds therefrom." (Emphasis supplied.)

On May 27, 1959, the plaintiffs as individuals entered into

an agreement with the defendant entitled "Assignment of Overriding Royalty" which is the agreement now in question. Effective date of the assignment was 7:00 a.m. on March 1, 1958, that date being the date of the purchase.

By this assignment defendant assigned to plaintiffs, in equal shares, a 2 percent overriding royalty in the oil and gas produced, saved, and marketed from lands described in detail in the agreement. Payments were made by the defendants in the amount of $11,000 under the agreement. No further payments have been made. There is no dispute over the amount of the 2 percent overriding royalty as of the date of trial. The amount was $64,432.02.

In addition, there is no dispute over the fact that except for the 2 percent royalty held by Lowe and Lynn that other royalty holders have been and are being paid.

Mr. E. M. Stringer, when called as an adverse witness, testified as follows concerning other royalty holders:

"Q. How many royalty holders are there, other than the state and federal governments? A. I could give a stack of checks about an inch and a half high.

"Q. And you write those every month? A. Every month.

"Q. And you pay all except Lowe and Lynn? A. We pay all but Lowe and Lynn, yes, and we don't pay Lowe and Lynn."

Paragraph 8 of the assignment reads as follows:

"It is understood that this assignment is subordinate only to those certain liens represented by the Mortgage and Deed of Trust to the Royal Bank of Canada Trust Company and Frederick L. Carver, dated May 19, 1958, and to the mortgage to E. M. Stringer and Max P. Zall dated May 20, 1958; however, Assignor's obligation to pay the overriding royalty assigned herein to Assignees *shall not be changed or diminished except by reason of the foreclosure of said mortgages,* but shall be *extinquished or diminished to the extent to which the interest of the Assignor in all or any part of the property* set out and described in Exhibit "A" hereto shall be extinguished, can-

celled, terminated or reduced by *any foreclosure action or proceedings instituted or taken under the said mortgages or either of them.*"

It is admitted that no foreclosure proceedings have been instituted on either of these indentures, and it is further admitted that defendant is in default on each of them.

On September 27, 1957, five months prior to the purchase by the defendant and nearly 20 months prior to the date of the assignment between the parties, a letter agreement was executed between the plaintiffs, the defendant, and Christie, Mitchell and Mitchell, in which Christie, Mitchell and Mitchell is identified as the first party, Flank Oil Company is identified as the second party, and Lowe and Lynn Associates, a partnership is identified as third parties. Under the terms of this letter agreement plaintiffs, with Flank's approval, transferred one-half of whatever they were to receive from Flank to Christie, Mitchell and Mitchell.

On September 1, 1961, defendant executed a division order on certain properties covered by the assignment. The division order authorized the payment of plaintiffs' royalty interest directly to the plaintiffs by Flank and by the operator of the properties.

In the appellant's Specifications of Error it is contended that:

1. The court erred in entering judgment for the plaintiffs and against the defendant.

2. The court erred in refusing to dismiss plaintiffs' complaint.

3. The Findings of Fact made and entered in this action are insufficient and do not support the judgment.

The issue of whether the money owed is due at this time, must find its answer in the construction of the language of Section 3.01 of the mortgage, and the Assignment of Royalty Agreement.

It must be determined whether the word "entitled" in the phrase "entitled to have all such oil, gas, [etc.]" as set forth in Section 3.01 of the mortgage, means absolutely, or whether

504

it requires a demand or some affirmative action by the mortgagee on the mortgagor.

If no demand is required, then the issue is one of priority. The language of the mortgage states that on request or on default, trustees are, without notice to or demand on the mortgagor, entitled to have all oil, gas, etc. Then the "Assignment of Overriding Oil Royalties" states first that the assignment is subordinate to the Mortgage to the Bank and to Stringer and Zall, and then makes a statement in qualification of the terms of the mortgage by saying that the obligation shall not be changed or diminished except by reason of the foreclosure of the mortgages.

While the appellant sets forth three specifications of error, basically they go to the principal issue of the construction of the mortgage and agreement, and we will consider them as such in our discussion.

Our position being one of interpretation we look to our cases for guidance. This court has held numerous times: " 'It is a fundamental rule that in the construction of contracts the courts may look not only to the language employed, but to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made.' Merriam v. United States, 107 U.S. 437, 441, 2 S.Ct. 536, 540, 27 L.Ed. 531, 533.

" 'To ascertain the intention, regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view. The words employed, if capable of more than one meaning, are to be given that meaning which it is apparent the parties intended them to have.' 1 Beach on Modern Law of Contracts, § 702." Smith v. School District No. 18, 115 Mont. 102, 139 P.2d 518; 12 Am.Jur., §§ 236, 249.

Even viewing the entire record in the light most favorable to appellant and accepting his basic premise that under the mortgage upon default, the trustees without notice are

entitled to all the oil and gas plus the proceeds from the marketing and sale of same, still something is missing. Flank Oil Company may not, unilaterally, make this determination. No demand for payment was made. Non-payment may be a default, but that default must be declared at least by the trustees, if not indeed foreclosed (a matter we need not decide here), before the interest of respondents would be diminished, delayed, or extinguished. To hold otherwise would be to allow the appellant to put off to a time uncertain, the ultimate payment of an admitted obligation of the appellant, something not provided for nor considered by the agreement.

While not set forth specifically as a specification of error, the appellant has attempted to include under Specification 3 the error of the court in failing to find Christie, Mitchell and Mitchell necessary parties. Under Rule VIII of this court such Specifications of Error are not properly raised.

This action was commenced prior to the adoption of the Rules of Civil Procedure. However, under either the statutory law at the time of the commencement of the action, section 93-2801, R.C.M.1947, or Rule 17(a), M.R.Civ.P., it is apparent to us that the trial court was correct in its finding that Christie, Mitchell and Mitchell were not necessary parties if the court considered respondents to be trustees for Christie, Mitchell and Mitchell's one percent. On the other hand, section 93-2823, R.C.M.1947, provides: "All persons holding as tenants in common, joint tenants, or any number less than all, may jointly or severally commence or defend any civil action or proceeding for the enforcement or protection of the rights of such party. In all cases one tenant in common or joint tenant can sue his cotenant."

If the respondents were not trustees, then they would be tenants in common with Christie, Mitchell and Mitchell, and under the provisions of the above-quoted statute they would not be necessary parties to the action.

Finding no merit to the appellant's Specifications of Error, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, DOYLE, and ADAIR concur.